Case Nos. 14-2006, 14-2050, 14-2101

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GREGORY THOMAS BERRY, et al.

Class Representatives/Appellees,

and

LEXISNEXIS RISK & INFORMATION
ANALYTICS GROUP, INC., et al.

Defendants/Appellees,

v.

MEGAN CHRISTINA AARON and the Aaron Appellants, SCOTT HARDWAY
and the Hardway Appellants, and ADAM E. SCHULMAN,

Parties-in-Interest/Appellants.

Appeal from the United States District Court
for the Eastern District of Virginia
Honorable James R. Spencer, District Court Case No. 3:11-cv-754

## BRIEF OF *AMICUS CURIAE* JAMES GRIMMELMANN
## IN SUPPORT OF APPELLANTS

DANIEL F. GOLDSTEIN
MATTHIAS L. NISKA
Brown Goldstein & Levy, LLP
120 East Baltimore St., Ste. 1700
Baltimore, Maryland 21202
(410) 962-1030/F: (410) 385-0869
dfg@browngold.com
mniska@browngold.com

JAMES GRIMMELMANN
Professor of Law
University of Maryland
Francis King Carey School of Law[1]
500 West Baltimore Street
Baltimore, Maryland 21201
(410) 706-7260
james@grimmelmann.net

---

[1] Affiliation listed for identification purposes only. The arguments in this brief are advanced solely on behalf of *amicus* and do not necessarily represent the views of *amicus*'s employer or any other entity.

# TABLE OF CONTENTS

Table of Authorities ........................................................................ ii

Disclosure Statement ....................................................................... 1

Statement of Interest ....................................................................... 2

Argument ........................................................................................ 2

I.    The Future-Conduct Release Would Exempt Contact &
Locate from the FCRA ........................................................... 3

    A.    The Release is Not a Settlement of the Present Lawsuit ...................... 3

    B.    The Release is Dangerous to Class Members ...................... 7

II.    The Future-Conduct Release for Contact & Locate Is Illegal ...................... 11

    A.    The Release Does Not Concern an Article III
Case or Controversy ............................................................... 14

    B.    The Release Exceeds the District Court's Statutory
Jurisdiction ............................................................................ 15

    C.    The Release Violates Rule 23 ............................................. 17

    D.    The Release Violates the Identical Factual Predicate
Doctrine ................................................................................. 18

III.    Conclusion .............................................................................. 23

    Certificate of Compliance .................................................... 24

    Certificate of Service ............................................................ 25

i

# TABLE OF AUTHORITIES

Adams v. LexisNexis Risk & Information Analytics Group, Inc.,
No. 08-4708, 2010 WL 1931135 (D.N.J. May 12, 2010) ....................................3

Amchem Prods. , Inc. v. Windsor,
521 U.S. 591 (1997)................................................................. 8, 12, 17

Authors Guild v. Google Inc.,
770 F. Supp. 2d 666 (S.D.N.Y. 2011) ........................................... 11, 21

Bryant v. Cheney,
924 F.2d 525 (4th Cir. 1991) ...................................................14

Diamond v. Charles,
476 U. S. 54 (1986)................................................................17

Doe v. Va. Dept. of State Police,
713 F.3d 745 (4th Cir. 2013) ................................................ 11, 12

Empire State Bldg. Ass'n,
No. 654456/2013 (N.Y. Sup. Ct. July 7, 2014) ...................................18

Gasner v. Bd. of Supervisors,
103 F.3d 351 (4th Cir. 1996) .............................................12

Hesse v. Sprint Corp.,
598 F.3d 581 (9th Cir. 2010) ..............................................18

Kremer v. Chemical Constr. Corp.,
456 U.S. 461 (1982)..........................................................20

Literary Works in Electronic Databases Copyright Litigation,
654 F.3d 242 (2d Cir. 2011) ............................................ 18, 21

Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland,
478 U.S. 501 (1986)..........................................................14

Marbury v. Madison,
    5 U.S. (1 Cranch) 137 (1803) ...................................................................15

Matsushita Elec. Indus. Co. v. Epstein,
    516 U.S. 367 (1996)...............................................................................19

Nat'l Park Hospitality Ass'n v. Dept. of Interior,
    538 U.S. 803 (2003).............................................................................14

Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.,
    660 F.2d 9 (2d Cir. 1981) ....................................................................18

Nottingham Partners v. Dana,
    564 A. 2d 1089 (Del. 1989) ................................................................19

Ortiz v. Fibreboard Corp.,
    527 U.S. 815 (1999).................................................................................8

Pac. R.R. Co. v. Ketchum,
    101 U.S. 289 (1880)...........................................................................13

Phila. Stock Exchange Inc.,
    945 A.2d 1123 (Del. 2008) .................................................................18

Prudential Ins. Co. of Am. Sales Practice Litig.,
    261 F.3d 355 (3d Cir. 2001) ...............................................................18

Schwartz v. Dallas Cowboys Football Club,
    157 F. Supp. 2d 561 (E.D. Pa. 2001) .................................................20

Uhl v. Thoroughbred Tech. & Telecomm., Inc.,
    309 F.3d 978 (7th Cir. 2002) .............................................................20

United States v. Tohono O'Odham Nation,
    131 S. Ct. 1723 (2011).......................................................................20

Wal-Mart Stores, Inc. v. Visa USA, Inc.,
    396 F.3d 96 (2d Cir. 2005) .................................................................18

## <u>Other Authorities</u>

James Grimmelmann, *Future Conduct and the Limits of Class-Action Settlements*, 91 N.C. L. Rev. 387, 409–10 (2013) ............................................................passim

Richard D. Freer & Edward H. Cooper, 13B Federal Practice & Procedure § 3532.2 (3d ed. 2014) ........................................................................12

Tobias Barrington Wolff, *Federal Jurisdiction and Due Process in the Era of the Nationwide Class Action*, 156 U. Pa. L. Rev. 2035, 2092 (2008) ...........................13

## <u>Statutes</u>

15 U.S.C. § 1681a ..............................................................................3, 9

15 U.S.C. § 1681e ..................................................................................4

15 U.S.C. § 1681g ..................................................................................4

15 U.S.C. § 1681i ...................................................................................4

28 U.S.C. § 1331 ..................................................................................16

28 U.S.C. § 1367 ..................................................................................16

28 U.S.C. § 1738 ..................................................................................19

## <u>Rules</u>

Fed. R. Civ. P. 23 ......................................................................... passim

Fed. R. Civ. P. 82 ................................................................................16

iv

## DISCLOSURE STATEMENT

*Amicus curiae* James Grimmelmann is an individual. No party's counsel authored this brief in whole or part. No party or party's counsel contributed money intended to fund preparing or submitting this brief. No person other than *amicus curiae* and counsel for *amicus curiae* contributed money intended to fund preparing or submitting this brief.

## STATEMENT OF INTEREST

*Amicus* is a professor at the University of Maryland Francis King Carey School of Law who has studied and written about prospective releases in class-action settlements. The proposed settlement has features that relate to amicus's specific expertise.

## ARGUMENT

The proposed settlement includes an unusual and unusually dangerous release. Class members are required to stipulate that a hypothetical future service to be offered by LexisNexis Risk & Analytics Group, Inc. ("Lexis") will be deemed to comply with the Fair Credit Reporting Act ("FCRA")—whether it actually does or not. This feature of the proposed settlement is not a meaningful "settlement" of any existing dispute between the parties. Instead, it authorizes Lexis to violate class members' FCRA rights with impunity in the future. As such, it is not fair, reasonable, or adequate to class members. A class-action settlement of existing claims based on the defendant's past conduct cannot also release class members' future claims based on the defendant's unrelated future conduct. The Constitution, federal statutes, the Federal Rules of Civil Procedure, and federal Court of Appeals case law all prohibit the use of a class action over a past service to immunize a different future service.

2

## I.    The Future-Conduct Release Would Exempt Contact & Locate from the FCRA.

This is a suit against Lexis for violating the FCRA. But rather than change its conduct to fit the FCRA, Lexis would prefer to change the FCRA to fit its conduct.

### A.    The Release Is Not a Settlement of the Present Lawsuit.

Lexis sells reports on people. One of these reports is called Accurint. The Accurint database contains information on 200 million people, Appendix ("App.") 4, including "age, social security number, date of birth, employer and employment history, economic profile data regarding the consumer's home and neighboring properties, whether the consumer has filed for bankruptcy, has any liens or judgments, public records, UCC filings, professional licenses, accident history, recreational permits, and general information about the consumer's assets and property." App. 23. Lexis claims that Accurint reports are intended only for use in debt collection and fraud prevention. App. 52. But plaintiffs plausibly alleged that these highly detailed reports were "used or expected to be used" in granting and denying credit and therefore were "consumer reports" under the FCRA. *See* 15 U.S.C. § 1681a(d)(1) (2013); App. 23. *See also Adams v. LexisNexis Risk & Information Analytics Group, Inc.*, No. 08-4708, 2010 WL 1931135, at *6-*9 (D.N.J. May 12, 2010) (holding that plaintiffs there plausibly alleged that Accurint

3

reports are FCRA "consumer reports"). The FCRA requires consumer reporting agencies selling consumer reports to ensure that buyers "certify that the information will be used" for purposes allowed under the FCRA. 15 U.S.C. § 1681e(a) (2013). It requires them to provide consumers with "[a]ll information in the consumer's file" upon request. *Id*. § 1681g(a)(1). And it requires them to "conduct a reasonable reinvestigation" when a consumer disputes the accuracy of the information in a report. *Id*. § 1681i(a)(1)(A). Plaintiffs alleged that Lexis did none of this. In other words, Lexis sold Accurint reports that were *subject* to the FCRA but did not *comply* with the FCRA.

In the proposed settlement, Lexis offers to split Accurint in two. One half, called "Collections Decisioning," will both be subject to and comply with the FCRA. *See* Settlement Agreement, App. 120 at § 4.3.1.1.5 ("Defendants will acknowledge Collections Decisioning products and services as meeting the FCRA's definition of a 'consumer report.'"); *see generally id.* § 4.3.1.1 (describing Collections Decisioning and setting forth its certification procedures). App. 121. The other half, called "Contact & Locate," will attempt to avoid having to comply with the FCRA by avoiding being subject to it. *See* App. 121 at § 4.3.1.2.2 (restricting information in Contact & Locate database); App. 122 at § 4.3.1.2.4 (requiring warning to users of Contact & Locate that it may not be used for purposes regulated by the FCRA). So far, so good. These changes respond to some

4

of plaintiffs' objections to Accurint and modify it in ways that make it more likely to comply with the FCRA. If the case had been tried on the merits and the District Court had found for the plaintiffs, then this redesign could have been an appropriate form of injunctive relief. In short, splitting Accurint into Collections Decisioning and Contact & Locate could potentially have been a component of a reasonable settlement of the parties' dispute.

But the proposed settlement does not stop there. In addition to this injunctive relief and the usual releases for Lexis's alleged past violations of FCRA, the proposed settlement also requires that the Rule 23(b)(2) Settlement Class members give up their claims against Lexis for *future* violations of the FCRA. Specifically, the proposed settlement requires class members to stipulate that the FCRA will not apply to Contact & Locate:

> The Parties agree that the Contact & Locate suite of products and services will not involve the provision of "consumer reports" as that term is defined under the FCRA and FCRA State Equivalents and so have agreed on the following with regard to what date will be displayed in such reports and what uses of that data will be permitted.

App. 120–21 at § 4.3.1.2.1.

> The Parties agree that the Contact & Locate suite of products and services do not constitute "consumer reports" as that term is defined under the FCRA and so will not be subject to the FCRA's requirements relating to disputes, access, accuracy or otherwise.

5

*Id*. App. 123 at § 4.3.1.4.1. This stipulation is in effect a release. It will preclude class members from bringing claims against Lexis that Contact & Locate violates the FCRA.

It would be one thing for class members to agree that *Accurint* complies with the FCRA. That, coupled with appropriate relief, would be a settlement of the dispute between plaintiffs and Lexis—a compromise in which plaintiffs stop asserting their claims and Lexis gives them concessions in return. But that is very different from an agreement that *Contact & Locate* complies with the FCRA, for the simple reason that Contact & Locate does not yet exist. It may come into existence in the future if the proposed settlement is approved, but even then its design and implementation are sketchy at best. The "Parties have reviewed certain details regarding the contemplated design" of Contact & Locate, *see* App. 122 at § 4.3.1.3.1, but those details are not memorialized in the agreement itself. Indeed, "the specific design and content of the Contact & Locate and Collection Decisioning suite of products and services may change over time to respond to the then current requirements of customers and the market." *Id*. § 4.3.1.3.2. Such an open-ended prospective release is not needed to terminate all existing causes of action between the parties. Even without it, Lexis would still obtain global peace for everything it has ever allegedly done to class members in the past. *See* App. 129 at § 4.5.1. (releasing "all Willful Noncompliance Remedies, known or

6

unknown, *arising on or before the Effective Date* that Named Plaintiffs and the

Rule 23(b)(2) Settlement Class had based on any Covered Conduct") (emphasis

added); App. 130 at § 4.5.2. (waiving availability of class action "for Claims *that*

*were or could have been brought* in the Litigation) (emphasis added). This

"settlement" is in substance a forward-looking agreement between Lexis and

almost the entire adult population of the United States that the FCRA will not

apply to Contact & Locate—in other words, not a settlement at all.

### B.    *The Release Is Dangerous to Class Members*

Under the proposed settlement, Contact & Locate will be immune from the

FCRA. This is not just a matter of the availability of the class-action device or of

individual monetary relief. [2] Instead, no matter what form Contact & Locate takes

or how Lexis implements it, and regardless of whether Contact & Locate complies

with the FCRA, class members will not be able to challenge it until 2020. This is

all the more remarkable in that Contact & Locate does not even exist yet. Under

---

[2] *Amicus* takes no position on the use of a Rule 23(b)(2) injunctive relief class where the statute does not provide for injunctive relief, the extinguishment of monetary claims in a mandatory non-opt-out class, the adequacy of representation in the face of conflicts among subclasses, the adequacy of the compensation given to class members in light of the releases they give, the propriety of the fee award, or any of the other issues raised by objectors. Even assuming that the proposed settlement were permissible in all other respects, the sweeping prospective release for Contact & Locate would still make the settlement unfair, unreasonable, and inadequate.

7

the guise of a class-action settlement, Lexis seeks a prospective exemption from the FCRA.

In other words, this is no ordinary release. Typical releases settle existing claims based on the defendant's past conduct. *See* James Grimmelmann, *Future Conduct and the Limits of Class-Action Settlements*, 91 N.C. L. REV. 387, 409–10 (2013). In some rare cases, class members give up future claims arising from past conduct. For example, people who have been exposed to asbestos but who have not developed mesothelioma or another serious disease might give a release to the manufacturers. Even these releases are treated with great skepticism by the courts. *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 854–59 (1999) (rejecting attempt to certify settlement class that included plaintiffs with future injuries); *Amchem Prods. , Inc. v. Windsor*, 521 U.S. 591, 622–28 (1997) (same). The proposed release here goes even further; it forgives the defendant for trespasses it has not yet committed.

The potential for mischief is self-evident. If this settlement is approved, Lexis will know that it can design and operate Contact & Locate with near-complete disregard for the FCRA. Although the proposed settlement contains various limitations on how Contact & Locate will operate, they do not ensure

FCRA compliance.[3] For example, the proposed settlement says that Lexis will present Contact & Locate customers with a warning screen stating that they should not use it for FCRA purposes. App. 122 at § 4.3.1.2.4. But even if Lexis knows that specific customers are using Contact & Locate to deny credit and screen employment applications—so that Contact & Locate would be "expected to be used" for FCRA-regulated purposes—Lexis would have no further obligations under the FCRA. Similarly, the proposed settlement allows Contact & Locate to contain protected information so long as that information also "bears a reasonable relationship" to debt collection, App. 121 at § 4.3.1.2.2(c), a term that appears nowhere in the FCRA. The result is that Lexis is free to shape Contact & Locate within these new and more capacious boundaries, without worrying about consumers' FCRA rights.

These are terrible incentives to give a data broker, particularly one that is before this Court only because it has been accused of willfully violating the FCRA. Indeed, the proposed settlement itself warns that "the specific design and content

---

[3] In contrast, the settlement does not attempt to shield other future services beyond the bounds of the FCRA. It says that "Post Settlement Products shall not be 'consumer reports' within the meaning of the FCRA so long as the Post Settlement Products are not used in whole or in part as a factor in determining eligibility or credit, insurance, or employment or for any other eligibility purpose that would qualify it as a consumer report under the FCRA." App. 131-32 at § 4.5.4. This provision is a tautology; it merely repeats the definition of "consumer reports" under the FCRA, *see* § 15 U.S.C. § 1681a(d)(1) (2013).

9

of . . . Contact & Locate . . . may change over time to respond to the then current requirements of customers and the market." App. 122 at § 4.3.1.3.2. Experience shows that Lexis's "consumers" and "the market" want detailed personal reports on consumers without the hassle of FCRA compliance.

There is no good reason to include this provision in the proposed settlement. To the extent that its restrictions merely track the FCRA's substantive thresholds, they are redundant: plaintiffs agree not to sue Lexis for violating the FCRA unless it violates the FCRA. To the extent that they diverge from the FCRA, they authorize Lexis to violate the FCRA in the future. Similarly, Lexis's argument that it is "entitled to obtain complete peace," *see* Defendants' Memorandum in Support, Dkt. No. 106–1, at 33, begs the question. Global peace in class-action settlements is about wiping the slate clean and letting a defendant move forward without fear of overhanging liability from its past acts. With this release, Lexis asks not for a clean slate but a Get-Out-of-Jail-Free card it can use should it run afoul of the FCRA again. If Lexis intends Contact & Locate to stay within the FCRA's bounds, it doesn't need this release. But if Lexis uses Contact & Locate to go beyond what the FCRA allows, approving the settlement would mean approving FCRA violations. Either way, there is no justification for including this release in the settlement.

10

The proposed settlement is also unfair to Lexis's competitors who obeyed the FCRA. Unlike Lexis, they must defend themselves against FCRA lawsuits if they offer services indistinguishable from Contact & Locate. This sets a harmful precedent: it encourages others to break the law so they can obtain similarly generous "settlements." *See Authors Guild v. Google Inc.*, 770 F. Supp. 2d 666, 679 (S.D.N.Y. 2011) (rejecting settlement in which defendant "took a shortcut" "in calculated disregard of [class members'] rights" while "competitors went through the 'painstaking' and 'costly' process of obtaining permissions"). In essence, Lexis convinced the District Court to rewrite the FCRA solely for it. This "settlement" is better described as a judicially enacted private bill for the benefit of the party least deserving of one. It trenches on Congress's domain, disrupts a carefully designed statutory scheme, and creates upside-down incentives.

## II.    The Future-Conduct Release for Contact & Locate Is Illegal.

The District Court should not have approved this prospective release of class members' hypothetical future claims based on Contact & Locate, because those claims were never properly before it. Class members may have live claims based on Contact & Locate in the *future*, if Lexis ever implements it, but those hypothetical claims are not ripe *now*. "A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'" *Doe v. Va. Dept. of State Police*, 713 F.3d 745, 758 (4th Cir. 2013),

11

*quoting Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996). Contact

& Locate does not exist and will not exist unless the settlement is approved. Lexis

has done utterly nothing to suggest it would launch Contact & Locate otherwise.

Thus, any injuries resulting from Contact & Locate are "uncertain and contingent

future events that may not occur as anticipated, or indeed may not occur at all."

RICHARD D. FREER & EDWARD H. COOPER, 13B FEDERAL PRACTICE & PROCEDURE

§ 3532.2 (3d ed. 2014). Because Lexis retains substantial discretion over the design

of Contact & Locate, the issues in a hypothetical lawsuit over whether Contact &

Locate complies with the FCRA are not "purely legal," and thus they are not

currently "fit for judicial decision," *Doe*, 713 F.3d at 758.

If class members' claims could not be adjudicated in a class-action lawsuit,

they cannot be released in a settlement of that lawsuit. This is a matter of basic

fairness and due process to class members. If claims aren't class counsel's to

gamble with, they aren't class counsel's to give away.  This is also a matter of the

jurisdictional and prudential limits on a federal court's authority to entertain class

actions. Those limits do not go away when a class is being certified for settlement

rather than for litigation. *See Amchem*, 521 U.S. at 622 ("Federal courts, in any

case, lack authority to substitute for Rule 23's certification criteria a standard never

adopted— that if a settlement is 'fair,' then certification is proper.") Because the

District Court could not possibly have adjudicated these future-conduct claims

12

based on Contact & Locate in the lawsuit itself, they were not properly before it as part of a settlement either. Such claims do not present a ripe Article III case or controversy, Congress has not given the federal courts jurisdiction over them, they are not authorized by Rule 23, and they violate the identical factual predicate doctrine consistently followed by the federal Courts of Appeals.

This link between litigation and settlement is stricter in class-action suits than in individual suits. Individuals can always negotiate and enter into contracts, whether they are currently suing each other or not. If individuals wish to bind themselves, they can do so without going anywhere near a court. Should they wish to bind themselves while also settling a lawsuit, "the parties' consent animates the legal force of a consent decree." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986). *See also Pac. R.R. Co. v. Ketchum*, 101 U.S. 289, 298 (1880) ("Consent cannot give the courts of the United States jurisdiction, but it may bind the parties . . . ."). The "consent" in a class action is fictional, particularly in a mandatory Rule 23(b)(2) class like the present one, from which class members are not permitted to opt out. *See* Tobias Barrington Wolff, *Federal Jurisdiction and Due Process in the Era of the Nationwide Class Action*, 156 U. PA. L. REV. 2035, 2092 (2008) (describing "legal fiction of constructive consent in class action proceedings"). Class-action settlements are binding on absent class members not because they have consented to anything but because a court has

13

invoked its judicial power to enter an order binding them. Here, there is no agreement to be enforced in the absence of the court's assertion of jurisdiction. Class counsel's job is to litigate class members' claims or settle those claims; class counsel has no free-floating authority to enter into contracts on behalf of the class on any subject under the sun. *See generally* Grimmelmann, *Future Conduct*, at 412–15 (discussing issue in detail). When courts in class-action cases approve "broader relief than the court could have awarded after a trial," *Firefighters*, 478 U.S. at 525, they are awarding *relief* in favor of a class rather than extracting *releases* from a class. The individual defendant gives its consent directly, and so can be bound. But releases given by a class can extend only to the limits of class counsel's authority, i.e. those claims actually at issue in the litigation.

### A.    The Release Does Not Concern an Article III Case or Controversy.

Class members' claims against Contact & Locate are unripe, and unripe claims do not fall within the "judicial power of the United States." U.S. Const. Art. III. *See, e.g., Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 807-08 (2003). Ripeness is a "subset[] of Article III's command that the courts resolve disputes, rather than emit random advice." *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991).[4] To be sure, class members have ripe claims against Lexis based

---

[4] Before the District Court, the Aaron Objectors made a similar Article III argument but emphasized the advisory opinion doctrine rather than ripeness. *See* App. 754 – 56. *Amicus* believes that this release is more precisely analyzed in

14

on Accurint, which it has been operating for years. But Contact & Locate is not Accurint, and the parties concede that the two products are legally different. If they were not, the settlement's relief for class members would be illusory, and it would need to be rejected as not "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Contact & Locate is not on trial here; Accurint is. The fact that Lexis has allegedly violated the FCRA in one way with one service does not give the District Court jurisdiction to let Lexis violate the FCRA in a different way with a different service. If Lexis had set class members' houses on fire, the District Court would have jurisdiction over class members' trespass claims. But Lexis could not use that class action to extract a settlement authorizing it to run class members over with trucks. Their hypothetical battery claims would not magically become ripe simply because they also had ripe trespass claims. So here. *See* Grimmelmann, *Future Conduct*, at 448–50 (discussing issue in more detail).

### B.    *The Release Exceeds the District Court's Statutory Jurisdiction.*

Even where the Constitution permits the federal courts to exercise jurisdiction, only Congress can actually confer that jurisdiction. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803). It has not done so here. Congress has

---

terms of ripeness: the legality of Contact & Locate is not currently fit for judicial resolution but might become so if and when LexisNexis sells it in some more concrete form. At present, however, the distinction is not significant. The claims relating to Contact & Locate are unripe *and* a judgment releasing them therefore constitutes a prohibited advisory opinion insofar as it does not resolve any existing case or controversy between the parties.

conferred jurisdiction in the District Court over class members' FCRA claims based on Accurint; these are "civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331. But class members do not have FCRA claims based on Contact & Locate, which does not exist. The District Court does not have supplemental jurisdiction either; that only extends to claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id*. § 1367(a). Claims against Contact & Locate cannot be part of the "same case or controversy" when they are not part of any live case or controversy at all. The Federal Rules do not change matters. Although Rule 23 allows some class members to "sue or be sued as representative parties on behalf of all members," Fed. R. Civ. P. 23(a), Rule 82 makes clear that this merely allows the federal courts to act more efficiently in exercising the jurisdiction they already enjoy, rather than extending it. Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts . . . .").

In short, even if Congress could constitutionally confer hypothetical jurisdiction over class members' claims against Contact & Locate, the United States Code and Federal Rules are crystal-clear that it has not. Where Congress has not conferred jurisdiction, the parties cannot create it by presenting the District Court with a document titled "Settlement Agreement and Release" rather than one

16

titled "Class Action Complaint." *See* Grimmelmann, *Future Conduct*, at 450–51 (discussing issue in more detail).

### C.   The Release Violates Rule 23.

Rule 23 is carefully worded to avoid abusively expansive future-conduct releases like the ones in the proposed settlement. A class may be certified only with respect to "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Here, there are no common questions of fact because there are no facts yet about how Contact & Locate will operate, only contingent possibilities within the broad latitude the settlement gives to Lexis. Nor are there any common questions of law because the legal claims are unripe. Similarly, plaintiff class representatives cannot have typical "claims or defenses" if they have no claims at all. *See* Fed. R. Civ. P. 23(a)(3). No one in the class has "claims" about Contact and Locate, so there are no claims against which to assess typicality. *See Amchem*, 521 U.S. at 623 n.18 ("The words 'claims or defenses' in this context . . . manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an *actual or impending* law suit.") (quoting *Diamond v. Charles*, 476 U. S. 54, 76-77 (1986) (O'Connor, J., concurring in part and concurring in judgment)) (emphasis added). Along the same lines, , to "define . . .  the class claims, issues, or defenses," as a District Court must do when it certifies a plaintiff class, *see* Fed. R. Civ. P. 23(c)(1)(b), there must be "claims" or "issues" to be

17

defined. Here again any such claims or issues are illusory. *See* Grimmelmann, *Future Conduct*, at 451–52 (discussing issue in more detail).

### D.    *The Release Violates the Identical Factual Predicate Doctrine.*

Under Rule 23, a class-action settlement may only release claims that arise out of "the identical factual predicate as that underlying the claims in the settled class action*." In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242, 248 (2d Cir. 2011).  *Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010); In re *Prudential Ins. Co. of Am. Sales Practice Litig*., 261 F.3d 355, 366–67 (3d Cir. 2001) (using phrase "same nucleus of operative facts" to describe doctrine). *See also* In re *Phila. Stock Exchange Inc.*, 945 A.2d 1123, 1146–47 (Del. 2008) (en banc) (applying state rule closely modeled on federal Rule 23);[5] Grimmelmann, *Future Conduct*, at 444–47 (explaining doctrine). This is a preclusion doctrine for class-action settlements; it ties the scope of permissible releases to the scope of the underlying lawsuit. Thus, a class-action settlement "may release claims . . . that share the same integral facts as settled claims," *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 106 (2d Cir. 2005), but not claims "which depend not only upon a different legal theory but upon proof of further facts." *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 18 n.7 (2d Cir.

---

[5] *But see* In re *Empire State Bldg. Ass'n*, No. 654456/2013, at *5–*6 (N.Y. Sup. Ct. July 7, 2014) (noting asbence of New York state caselaw on point in case where released claim would have been barred whether identical factual predicate applied or not).

18

1981) (Friendly, J.). Claims that rely on the same "legal theory" can be barred by issue preclusion; claims that do not rely on "proof of further facts" can be barred by claim preclusion. But claims that rely on a different legal theory and on additional facts cannot be barred by either issue or claim preclusion, and hence do not "share the same integral facts as settled claims." They cannot be released in a class-action settlement. *See* Grimmelmann, *Future Conduct*, at 440–44 (discussing preclusion).

The application of this rule to future conduct like Contact & Locate is straightforward. Since only ripe claims can be asserted in court, claim preclusion will never bar claims based on future conduct, which are categorically unripe because the conduct has not happened, and may not ever happen. *See* Grimmelmann, *Future Conduct*, at 440–44. [6] Contact & Locate does not exist. Lexis has done nothing that would allow class members to sue it over Contact &

_____

[6] When courts allow the release of claims that "might not have been presentable in the class action," *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 , 377(1996), they are referring to claims for which some other court has exclusive jurisdiction, so that a suit in that other court could have barred the claims under the ordinary operation of preclusion doctrine. *See id*. at 373 (applying Full Faith and Credit Act, 28 U.S.C. § 1738, to bar federal claims as a result of a settlement in state court). These statements do not alter the identical factual predicate doctrine, which is an independent limit on the scope of permissible releases in settlements. *E.g. id.* at 377 ("[A] court may permit the release of a claim *based on the identical factual predicate* as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.") (quoting *Nottingham Partners v. Dana*, 564 A. 2d 1089 (Del. 1989)). *See also* Grimmelmann, *Future Conduct*, at 454–55 (discussing multi-jurisdiction releases).

Locate. Claims against Contact & Locate do not "arise[] from the same transaction" as claims against Accurint. *See United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1730 (2011), *quoting Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 482 n.22 (1982).

As for issue preclusion, that doctrine might apply to future-conduct claims where a defendant is engaged in a single continuing course of conduct that raises the same factual and legal issues in the past and in the future. *See, e.g.*, *Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 984 (7th Cir. 2002) (holding that settlement could release future trespass claims that were "in no way hypothetical" because the defendant had had announced plans to lay cable on plaintiffs' property and committed slander of title in claiming an easement to do so). But where the past and future conduct raise different issues, the future conduct's legality cannot be tested in a class-action lawsuit based on the past conduct, and hence cannot be settled in a class-action lawsuit based on that past conduct, either. *See, e.g.*, *Schwartz v. Dallas Cowboys Football Club*, 157 F. Supp. 2d 561, 577–78 (E.D. Pa. 2001) (rejecting settlement that would release future antitrust claims against future bundling of NFL games on cable where the underlying lawsuit challenged only past bundling of NFL games on satellite broadcasts). A judgment based on an opinion that Accurint complies with the FCRA might have some bearing on the legality of Contact & Locate, or it might

20

not. It depends on the specifics of how Lexis implements Contact & Locate—which of course it has not done yet. The parties have not shown, nor has the District Court made findings on the record, that the issues Contact & Locate would necessarily present are sufficiently close to those presented by Accurint to justify the sweeping statement of FCRA compliance in the proposed settlement.

A pair of recent copyright cases illustrates what it means for future-conduct claims to be based on an "identical factual predicate." In both *Literary Works* and *Authors Guild*, the defendants copied plaintiffs' copyrighted works into a massive database and negotiated a settlement allowing them to sell access to the works to the general public.[7] In *Literary Works*, the court approved the settlement because the plaintiffs had sued the defendant publishers for selling access to the database. *Literary Works*, 654 F.3d at 247–49. "[A] trial of this case would determine whether it is permissible for publishers to continue to sell and license the works." *Id.* at 248. Thus, "the Settlement's release pertaining to future uses by publishers and their sublicensees was permissible." *Id.* at 249. But in *Authors Guild*, the court rejected a similar settlement because the plaintiffs sued Google only for building the database. "The case was about the use of an indexing and searching tool, not the sale of complete copyrighted works." *Authors Guild*, 770 F. Supp. 2d. at 678. Hence, "the released conduct would not arise out of the 'identical factual predicate'

---

[7] Indeed, the same law firm served as lead class counsel for plaintiffs in both cases.

21

as the conduct that is the subject of the settled claims." *Id*. at 679. In *Literary Works*, the settlement was approved because the defendant sought permission only to continue doing in the future what it already had been doing in the past; in *Authors Guild* an extraordinarily similar settlement was rejected because it contemplated a release for future conduct that was materially different than the past conduct it had been sued for. Contact & Locate is a new product à la *Authors Guild*, not an existing product à la *Literary Works*. Lexis is not entitled to a future release for a product it has never offered in the past.

### III.    Conclusion

Contact & Locate remains a twinkle in Lexis's eye. But Lexis seeks to send it forth into the world under a judicial parasol, one that will screen its tender head from the sunlight of the FCRA. Class counsel should not have agreed to this sweeping, forward-looking, and potentially abusive release. The District Court should not have approved the settlement containing it. This Court can set matters right by reversing the order of approval.

Respectfully Submitted,

/s/ James Grimmelmann
JAMES GRIMMELMANN
Professor of Law
University of Maryland
Francis King Carey School of Law
500 West Baltimore Street
Baltimore, Maryland 21202
(410) 706-2670
james@grimmelmann.net

Daniel F. Goldstein
Matthias L. Niska
BROWN GOLDSTEIN & LEVY, LLP
120 East Baltimore St., Ste. 1700
Baltimore, Maryland 21202
(410) 962-1030 / Fax: (410) 385-0860
dfg@browngold.com
mniska@browngold.com

*Counsel for Amicus*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7) because it contains <u>5,486</u> words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

it has been prepared in a proportionally spaced typeface using Microsoft

Office Word 2010 in Times New Roman 14-point font.

3.      In making this certification, I have relied on the word count feature of

the word-processing program used to prepare this brief.


                                    /s/ James Grimmelmann
                                    James Grimmelmann

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of December, 2014, I filed the

foregoing Amicus Brief by James Grimmelmann, using the CM/ECF system.  The

CM/ECF system will automatically serve all counsel in this case.


December 16, 2014                              /s/ James Grimmelmann

25

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
# APPEARANCE OF COUNSEL FORM

**BAR ADMISSION & ECF REGISTRATION:** If you have not been admitted to practice before the Fourth Circuit, you must complete and return an Application for Admission before filing this form. If you were admitted to practice under a different name than you are now using, you must include your former name when completing this form so that we can locate you on the attorney roll. Electronic filing by counsel is required in all Fourth Circuit cases. If you have not registered as a Fourth Circuit ECF Filer, please complete the required steps at Register for eFiling.

**THE CLERK WILL ENTER MY APPEARANCE IN APPEAL NO.** _____ as

[ ]Retained  [ ]Court-appointed(CJA)  [ ]Court-assigned(non-CJA)  [ ]Federal Defender  [ ]Pro Bono  [ ]Government

COUNSEL FOR: _____

_____as the
(party name)

appellant(s)      appellee(s)      petitioner(s)      respondent(s)      amicus curiae      intervenor(s)

_____
(signature)

_____          _____
Name (printed or typed)                                                    Voice Phone

_____          _____
Firm Name (if applicable)                                                  Fax Number

_____          _____
Address                                                                    E-mail address (print or type)

**CERTIFICATE OF SERVICE**

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____          _____
Signature                                                                   Date