**Nos. 14-2006, 14-2050, 14-2101**

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

GREGORY THOMAS BERRY; SUMMER DARBONNE, on behalf of herself and all others similarly situated; SHAMOON SAEED, on behalf of himself and all others similarly situated; ARTHUR B. HERNANDEZ, on behalf of himself and all others similarly situated; ERIKA A. GODFREY, on behalf of herself and all others similarly situated; TIMOTHY OTTEN, on behalf of himself and all others similarly situated,

*Plaintiffs-Appellees,*

and

LEXISNEXIS RISK AND INFORMATION ANALYTICS GROUP INC.; SEISINT, INC.; REED ELSEVIER INC.,

*Defendants-Appellees,*

v.

ADAM E. SCHULMAN,

*Party-in-Interest - Appellant.*

(caption continued on back of cover)

Appeals from the United States District Court for the Eastern District of Virginia, case no. 3:11-cv-754-JRS, Hon. James R. Spencer

## BRIEF FOR DEFENDANTS-APPELLEES

RONALD I. RAETHER, JR.
FARUKI, IRELAND & COX, PLLC
500 Courthouse Plaza, SW
10 North Ludlow Street
Dayton, Ohio 45402

DAVID NEAL ANTHONY
TROUTMAN SANDERS, LLP
P.O. Box 1122
Richmond, Virginia 23218

*Counsel for Defendants-Appellees LexisNexis Risk and Information Analytics Group Inc., Seisint, Inc., and Reed Elsevier Inc.*

FEBRUARY 25, 2015

JOSEPH R. PALMORE
MARC A. HEARRON
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: 202.887.6940
JPalmore@mofo.com

JAMES F. MCCABE
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105

MICHAEL B. MILLER
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019

GREGORY THOMAS BERRY; SUMMER DARBONNE, on behalf of herself and all others similarly situated; SHAMOON SAEED, on behalf of himself and all others similarly situated; ARTHUR B. HERNANDEZ, on behalf of himself and all others similarly situated; ERIKA A. GODFREY, on behalf of herself and all others similarly situated; TIMOTHY OTTEN, on behalf of himself and all others similarly situated,

*Plaintiffs-Appellees,*

and

LEXISNEXIS RISK AND INFORMATION ANALYTICS GROUP INC.; SEISINT, INC.; REED ELSEVIER INC.,

*Defendants-Appellees,*

v.

MEGAN CHRISTINA AARON and the Aaron Objectors,

*Party-in-Interest - Appellant.*

_____

GREGORY THOMAS BERRY; SUMMER DARBONNE, on behalf of herself and all others similarly situated; SHAMOON SAEED, on behalf of himself and all others similarly situated; ARTHUR B. HERNANDEZ, on behalf of himself and all others similarly situated; ERIKA A. GODFREY, on behalf of herself and all others similarly situated; TIMOTHY OTTEN, on behalf of himself and all others similarly situated,

*Plaintiffs-Appellees,*

and

LEXISNEXIS RISK AND INFORMATION ANALYTICS GROUP INC.; SEISINT, INC.; REED ELSEVIER INC.,

*Defendants-Appellees,*

v.

SCOTT HARDWAY and the Hardway Objectors,

*Party-in-Interest - Appellant.*

_____

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-2006__     Caption: __Berry, et al. and LexisNexis et al. v. Adam E. Schulman__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__LexisNexis Risk & Analytics Group Inc. nka LN Risk Solutions FL Inc.__
(name of party/amicus)

_____

who is ___appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

2.  Does party/amicus have any parent corporations?                    ☒ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    See attached

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐ YES ☒ NO
    If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☒NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☒NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☒NO
If yes, identify any trustee and the members of any creditors' committee:

Signature:  s/ Ronald I. Raether, Jr.                    Date:  October 8, 2014

Counsel for:  LexisNexis Risk & Analytics Group Inc. nka LN Risk Solutions FL Inc.

## CERTIFICATE OF SERVICE
***************************

I certify that on  October 8, 2014  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

See attached.

_____
(signature)

OCT, 8, 2014
_____
(date)

- 2 -

ii

The parent companies of LexisNexis Risk & Analytics Group Inc. nka LN Risk Solutions FL Inc. are LexisNexis Risk Holdings Inc. and LexisNexis Risk Data Management Inc. The parent company of LexisNexis Risk Holdings Inc. and LexisNexis Risk Data Management Inc. is Reed Elsevier Inc. The following entities are parent companies of Reed Elsevier Inc.: Reed Elsevier U.S. Holdings Inc., Reed Elsevier Overseas BV, Reed Elsevier Holdings BV, Reed Elsevier (Holdings) Ltd. and Reed Elsevier Group plc. The parent companies of Reed Elsevier Group plc are publicly traded companies Reed Elsevier PLC (LSE: REL; NYSE: RUK) and Reed Elsevier NV (Euronext: REN; NYSE: ENL).

888072.1

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-2006        Caption: Berry, et al. and LexisNexis et al. v. Adam E. Schulman

Pursuant to FRAP 26.1 and Local Rule 26.1,

Reed Elsevier Inc.
(name of party/amicus)

who is    appellee        , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

2.    Does party/amicus have any parent corporations?                    ☒ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:
      The following entities are parent companies of Reed Elsevier Inc.:  Reed Elsevier U.S. Holdings Inc.,
      Reed Elsevier Overseas BV, Reed Elsevier Holdings BV, Reed Elsevier (Holdings) Ltd. and Reed
      Elsevier Group plc.  The parent companies of Reed Elsevier Group plc are publicly traded companies
      Reed Elsevier PLC (LSE:  REL; NYSE: RUK) and Reed Elsevier NV (Euronext: REN, NYSE, ENL).

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                        ☐ YES ☒ NO
      If yes, identify all such owners:

10/28/2013 SCC                           - 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☒NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☒NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                ☐ YES ☒NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature:   s/ Ronald I. Raether, Jr.                      Date:   October 8, 2014

Counsel for:   Reed Elsevier Inc.

## CERTIFICATE OF SERVICE
**************************

I certify that on   October 8, 2014       the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

        See attached.

_____                           OCT. 8, 2014
    (signature)                                      (date)

- 2 -

v

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-2006__        Caption: _Berry, et al. and LexisNexis et al. v. Adam E. Schulman_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Seisint Inc. nka LexisNexis Risk Data Management Inc._____
(name of party/amicus)

_____

who is __appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☒ NO

2.    Does party/amicus have any parent corporations?                    ☒ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      The parent company of Seisint Inc. nka LexisNexis Risk Data Management Inc. is Reed Elsevier Inc. The following entities are parent companies of Reed Elsevier Inc.: Reed Elsevier U.S. Holdings Inc., Reed Elsevier Overseas BV, Reed Elsevier Holdings BV, Reed Elsevier (Holdings) Ltd. and Reed Elsevier Group plc. The parent companies of Reed Elsevier Group plc are publicly traded companies Reed Elsevier PLC (LSE: REL; NYSE: RUK) and Reed Elsevier NV (Euronext: REN; NYSE: ENL).

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                            ☐ YES ☒ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☒NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☒NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☒NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature:   s/ Ronald I. Raether, Jr.                          Date:    October 8, 2014

Counsel for:   Seisint Inc. nka LexisNexis Risk Data Management Inc.

## CERTIFICATE OF SERVICE
**************************

I certify that on   October 8, 2014   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

    See attached

_____
        (signature)

          oct. 8, 2014
_____
             (date)

- 2 -

vii

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENTS ..............................................i

TABLE OF AUTHORITIES ....................................................... xi

STATEMENT OF THE ISSUES...................................................1

INTRODUCTION ...........................................................1

STATEMENT OF THE CASE...................................................6

    A.    Factual And Legal Background...........................................6

        1.    "Consumer reports" under the FCRA ...........................6

        2.    LexisNexis's Accurint® identity reports ....................................8

    B.    Proceedings Below ..................................................10

        1.    Plaintiffs' allegations ..............................................10

        2.    The settlement process .........................................11

        3.    The settlement terms ............................................13

            a.    The Rule 23(b)(2) class ..............................14

            b.    The Rule 23(b)(3) class ..............................17

        4.    Approval of the settlement.......................................17

SUMMARY OF ARGUMENT ..............................................19

STANDARD OF REVIEW ................................................23

ARGUMENT ...........................................................23

I.    THE RULE 23(b)(2) SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND OBJECTORS FAIL TO DEMONSTRATE THAT THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION IN SO CONCLUDING....................................23

A.   The Settlement Is Eminently Fair In Light Of The Substantial Obstacles Plaintiffs' Claims Would Have Faced On The Merits .......24

    1.   The (b)(2) class had little chance of obtaining statutory or punitive damages because there was no willful violation of the FCRA ..............................................................................25

    2.   The district court properly evaluated the fairness of the settlement in light of plaintiffs' low likelihood of success .......30

B.   The Procedural Aspects Of How The Settlement Was Attained Confirm That It Is Fair .......................................................32

C.   Objectors Fail To Demonstrate A Clear Abuse Of Discretion ..........33

    1.   The settlement did not have to provide the (b)(2) class monetary relief to be fair.............................................................33

    2.   The settlement provides the (b)(2) class non-pecuniary benefits that are more valuable than a token monetary payment to each class member would have been ....................35

    3.   The settlement's different treatment of the (b)(2) and (b)(3) classes is reasonable and fair ..........................................40

    4.   The settlement does not "fail[] to provide (b)(2) Class Members with viable FCRA claims anything more than it provides those members with no viable claims" .....................41

    5.   The settlement does not impermissibly immunize LexisNexis from future liability for the new Contact & Locate product.........................................................................43

II.   OBJECTORS FAIL TO DEMONSTRATE THAT THE DISTRICT COURT ABUSED ITS DISCRETION IN CERTIFYING A CLASS OF PLAINTIFFS UNDER RULE 23(b)(2) ..................................................51

A.   A Rule 23(b)(2) Class Is Appropriate Where, As Here, The Relief Awarded Is Injunctive Relief Applicable To The Class As A Whole .........................................................................51

B.    None Of The Objectors' Arguments Shows An Abuse Of Discretion In The Certification Of The Rule 23(b)(2) Class ..............53

CONCLUSION .................................................................................61

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acosta v. Trans Union, LLC*,
243 F.R.D. 377 (C.D. Cal. 2007)......................................................35

*Bell Atl. Corp. v. Bolger*,
2 F.3d 1304 (3d Cir. 1993) ............................................................34

*Bolin v. Sears, Roebuck & Co.*,
231 F.3d 970 (5th Cir. 2000) .........................................................55

*Carson v. American Brands, Inc.*,
450 U.S. 79 (1981).........................................................................24

*Christ v. Beneficial Corp.*,
547 F.3d 1292 (11th Cir. 2008) ......................................................55

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ...........................................................24

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*,
100 F.3d 1041 (1st Cir. 1996).........................................................32

*Crawford v. Equifax Payment Services, Inc.*,
201 F.3d 877 (7th Cir. 2000) ..........................................................35

*Estiverne v. Sak's Fifth Ave.*,
9 F.3d 1171 (5th Cir. 1993) (per curiam) ......................................27

*Flinn v. FMC Corp.*,
528 F.2d 1169 (4th Cir. 1975) .................................................*passim*

*Fuges v. Southwest Fin. Servs., Ltd.*,
707 F.3d 241 (3d Cir. 2012) ...........................................................37

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) ........................................................34

xi

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ...........................................................23

*Hecht v. United Collection Bureau, Inc.*,
  691 F.3d 218 (2d Cir. 2012) ............................................................57

*In re A.H. Robins Co.*,
  880 F.2d 709 (4th Cir. 1989) ......................................................31, 32

*In re Chicken Antitrust Litig.*,
  669 F.2d 228 (5th Cir. 1982) ...........................................................49

*In re Literary Works in Elec. Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011) .................................................48, 49, 50

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ............................................................34

*Kincade v. General Tire & Rubber Co.*,
  635 F.2d 501 (5th Cir. 1981) ................................................59, 60, 61

*Local Number 93 v. City of Cleveland*,
  478 U.S. 501 (1986)....................................................................54, 55

*Lujan v. G&G Fire Sprinklers, Inc.*,
  532 U.S. 189 (2001)........................................................................59

*Lukenas v. Bryce's Mountain Resort, Inc.*,
  538 F.2d 594 (4th Cir. 1976) ......................................................57, 59

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ...........................................................34

*McClendon v. Georgia Dep't of Cmty. Health*,
  261 F.3d 1252 (11th Cir. 2001) .......................................................49

*Mirfasihi v. Fleet Mortgage Corp.*,
  356 F.3d 781 (7th Cir. 2004) ...........................................................35

*Owner-Operator Indep. Drivers Ass'n v. USIS Commercial Servs., Inc.*,
  537 F.3d 1184 (10th Cir. 2008) .......................................................38

*Richards v. Delta Air Lines, Inc.*,
    453 F.3d 525 (D.C. Cir. 2006)...............................................................57, 58, 59

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007).............................................................................4, 25, 26, 27

*TBK Partners, Ltd. v. Western Union Corp.*,
    675 F.2d 456 (2d Cir. 1982) .............................................................................49

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
    445 F.3d 311 (4th Cir. 2006) .....................................................................18, 58

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)...............................................................51, 52, 59, 60

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .........................................................................32, 49

*Ward v. Dixie Nat'l Life Ins. Co.*,
    595 F.3d 164 (4th Cir. 2010) ...........................................................................23

*Washington v. CSC Credit Servs. Inc.*,
    199 F.3d 263 (5th Cir. 2000) ...........................................................................42

*Williams v. General Elec. Capital Auto Lease, Inc.*,
    159 F.3d 266 (7th Cir. 1998) ...........................................................................49

*Zimmerman v. Bell*,
    800 F.2d 386 (4th Cir. 1986) ...........................................................................34

## STATUTES

15 U.S.C. § 1681a ......................................................................................*passim*

15 U.S.C. § 1681b..............................................................................6, 14, 36

15 U.S.C. § 1681c-1............................................................................................42

15 U.S.C. § 1681c-2............................................................................................42

15 U.S.C. § 1681e ....................................................................................7, 36

15 U.S.C. § 1681g ...................................................................*passim*

15 U.S.C. § 1681h .............................................................................7

15 U.S.C. § 1681i ...................................................................*passim*

15 U.S.C. § 1681j ..............................................................................7

15 U.S.C. § 1681n .................................................................7, 20, 25

15 U.S.C. § 1681o .....................................................................7, 34

15 U.S.C. § 1681s .............................................................................27

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(b)(2) ......................................................*passim*

Fed. R. Civ. P. 23(b)(2) advisory committee's note ........................51, 56

Fed. R. Civ. P. 23(e)(2) .................................................................24

FTC, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* (July 2011) ...............45

FTC Opinion Letter to Marc Rotenberg (July 29, 2008) .........................9

FTC, *Protecting Consumer Privacy in an Era of Rapid Change: Recommendations for Businesses and Policymakers* (Mar. 2012) ....................37

Manual for Complex Litigation (Third) § 30.42 (1995) .........................32

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009) .......................................................52

## STATEMENT OF THE ISSUES

Whether the district court clearly abused its discretion in approving the class-action settlement, including certifying a class of plaintiffs under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## INTRODUCTION

The magistrate judge who oversaw the settlement in this case complimented the parties for having "worked hard to see what's fair," observed that each side had been required "to give up something [it] may not wish to have given up on," and noted that the resulting compromise would result in a "sea change" in the data-aggregation industry for the benefit of consumers. A609. The district court, noting that "the merit of Plaintiffs' claims—and, necessarily, the absent class members' theoretical future claims—is speculative at best," A2882, subsequently approved the settlement as fundamentally fair and reasonable and fully consistent with all constitutional and procedural requirements. The district court did not clearly abuse its discretion in reaching those determinations, and this Court should reject objectors' attempts to upend the resolution of plaintiffs' weak claims in exchange for historic injunctive relief.

Plaintiffs brought this putative-class-action against defendants-appellees (collectively, "LexisNexis") alleging that LexisNexis violated the Fair Credit Reporting Act ("FCRA") by not treating its Accurint® for Collections reports as

1

"consumer reports" under that statute. Accurint® for Collections reports consist of primarily publicly available information such as real-property records and assist debt collectors in locating debtors and their assets.

This is the third lawsuit that plaintiffs' counsel has filed against LexisNexis, alleging essentially the same purported violations of the FCRA with respect to the same reports. Plaintiffs' counsel were unable to obtain any class settlement or court-ordered relief in those two prior actions. Over the course of those three suits, plaintiffs' counsel and LexisNexis negotiated numerous times—including at nine in-person mediation conferences—to reach a global settlement, which is the subject of this appeal. The hard-fought settlement was negotiated at arms' length by experienced counsel and provides substantial benefits to both sides.

The settlement calls for the creation of two classes: one under Federal Rule of Civil Procedure 23(b)(3), which objectors do not challenge, and the other under Rule 23(b)(2), which they do. Those individuals who actively sought to treat Accurint® for Collections reports as consumer reports under the FCRA—by requesting free copies of their reports or attempting to dispute information in the reports—make up the Rule 23(b)(3) class. Under the settlement, the (b)(3) class members agree to release their FCRA claims against LexisNexis in their entirety, and in return they will receive financial compensation.

The (b)(2) class is defined as all individuals in the United States about whom information resided in the Accurint® database during a defined period. Even if the FCRA were applicable, those individuals were never denied any right afforded by the FCRA, such as the right to view the information in their file or the right to dispute that information. Nonetheless, the settlement does not extinguish the (b)(2) class members' FCRA claims. Instead, those class members agree to waive only the FCRA *remedies* of statutory and punitive damages for such claims, while retaining the right to seek actual damages individually.

In exchange for the (b)(2) class members' waiver of those discrete, limited remedies, LexisNexis has agreed to an injunction requiring groundbreaking, industry-leading protections that would apply equally to all class members. This non-pecuniary remedy is far more valuable to the (b)(2) class than a token payment to each class member would be, even assuming such a payment to such a large class would be feasible. Under the settlement, LexisNexis will fundamentally change the product suite it offers to the debt-collection industry by making sweeping changes to one product and creating an entirely new one. LexisNexis has agreed to treat one of those products as a consumer report under the FCRA. This will afford consumers the FCRA's full protections, such as the right to view the information in the consumer's file (often free of charge) and to dispute that information. The other product will be a significantly scaled-back version of

LexisNexis's current offering and will contain only information about a consumer's location and the location of assets. Although this second product is not even arguably a consumer report under the FCRA, LexisNexis has agreed to provide valuable FCRA-like consumer protections for it as well. The injunctive relief is indivisible, as it benefits every consumer about whom information is stored in the Accurint® for Collections database, regardless of whether a report has ever issued.

The district court correctly found this settlement to be eminently fair. It is settled law that the fairness of a settlement can be assessed only by reference to the class's chance of success if it litigated its claims. Here, plaintiffs' effort to secure statutory and punitive damages had little chance of success. To collect either remedy, class members would have had to prove not only that LexisNexis's Accurint® reports were consumer reports but also that LexisNexis's decision not to treat them as such was a *willful* violation of the statute. The Supreme Court has held that a defendant cannot have willfully violated the FCRA unless it was "objectively unreasonable" for the defendant to conclude that its actions did not violate the statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). Under *Safeco*, the absence of judicial or regulatory guidance that particular conduct violates the FCRA can preclude a finding of willfulness. *Id.* at 70.

4

Here, not only was there no guidance stating that Accurint® reports were consumer reports under the FCRA, there was actually guidance stating just the opposite. In 2008, the Federal Trade Commission ("FTC")—the federal agency then charged with enforcing the FCRA—definitively stated that LexisNexis's Accurint® reports were *not* consumer reports subject to the FCRA. That FTC statement rendered plaintiffs' entitlement to statutory and punitive damages especially weak—and makes all the more fair the settlement plaintiffs secured providing valuable injunctive relief without the need for further litigation.

Objectors' principal complaint is that the settlement extinguishes the (b)(2) class members' "claims" but does not provide them any monetary relief. But objectors' premise is incorrect. The settlement does not extinguish any claims but waives only certain remedies—statutory and punitive damages—for the class members' claims. Class members may still individually assert and try to prove any alleged FCRA claims and individually seek actual damages for any resulting injuries.

Objectors also challenge the certification of the (b)(2) class without giving the class members opt-out rights, but there is no abuse of discretion here either. This is precisely the kind of case to which Rule 23(b)(2) applies: one in which the final relief is an injunction that is indivisible and applies to the class as a whole. It is impossible for the class members to opt out of the relief; they would receive the

benefit of the injunction regardless.  What the objectors are seeking is the right to reap the benefit of the injunctive relief and *additionally* to have the right to sue for statutory damages.   And they assert that right notwithstanding the fact that objectors, like all members of the Rule 23(b)(2) class, retain the ability to pursue FCRA claims for actual damages as individuals.  The district court plainly did not abuse its discretion in rejecting objectors' unsupported contentions and approving the settlement.  The district court's decision should be affirmed.

## STATEMENT OF THE CASE

### A.    Factual And Legal Background

#### 1.    *"Consumer reports" under the FCRA*

The FCRA regulates the collection, dissemination, and use of certain consumer data.  The FCRA focuses on "consumer reports"—communications of certain kinds of information on a consumer prepared to assist in making certain eligibility determinations.  The FCRA imposes various obligations on "consumer reporting agencies"—companies that regularly prepare "consumer reports" (15 U.S.C. § 1681a(f))—and provides certain rights to consumers.  For example, consumer reports may be furnished only for certain uses, including those in connection with a credit transaction involving the consumer, for underwriting insurance for the consumer, or for employment purposes.  *Id.* § 1681b(a)(3). Consumers may view "[a]ll information in the consumer's file," *id.* § 1681g(a)(1),

6

often free of charge. Consumers also may dispute information in their file, in which case the consumer reporting agency must conduct a reasonable investigation into the accuracy of such information. *Id.* § 1681i.

Each of plaintiffs' claims depends on LexisNexis's being deemed a "consumer reporting agency" in the context of providing the Accurint® reports. A20-A21, A37-A39; 15 U.S.C. §§ 1681e(a), 1681g, 1681h, 1681i, 1681j. "Consumer reporting agency" is defined as a company that "assembl[es] or evaluat[es] consumer credit information . . . for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). "Consumer reports" are in turn limited to "communication[s] of any information by a consumer reporting agency bearing on" any of seven specific consumer characteristics ("credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living") and prepared for use in determining a consumer's "eligibility for," among other things, credit. *Id.* § 1681a(d)(1).

The FCRA creates liability for "actual damages sustained by the consumer" as a result of a consumer reporting agency's failure to comply with the FCRA's requirements. *Id.* §§ 1681n(a), 1681o(a). The FCRA also makes available statutory damages of between $100 and $1,000 (in lieu of actual damages) as well as punitive damages, for "willful[]" violations. *Id.* § 1681n(a).

### 2.  LexisNexis's Accurint® identity reports

In the context of providing Accurint® identity reports, LexisNexis is a data aggregator, not a consumer reporting agency.  LexisNexis prepares and sells, under the Accurint® brand, a number of identity reports used to locate people and assets, authenticate identities, and verify credentials.  LexisNexis aggregates and reports principally publicly available information such as motor vehicle records, licensing information, real-property records, and address and telephone information.  A51.  Accurint® for Collections reports, in particular, provide tools to help debt collectors locate individuals and businesses.  A51.

Accurint® reports are not sold for the purpose of determining a consumer's eligibility for credit, insurance, employment, or for other purposes that cause communications to be classified as "consumer reports" under the FCRA.  15 U.S.C. § 1681a(d)(1).  Indeed, Accurint® reports are marketed with a direction to the user, such as the following:

> Accurint for Collections does not constitute a "consumer report" as that term is defined in the federal Fair Credit Reporting Act, 15 USC 1681 et seq. (FCRA). Accordingly, *Accurint for Collections may not be used in whole or in part as a factor in determining eligibility for credit, insurance, employment or another permissible purpose under the FCRA.*

A52 (emphasis added).

8

The FTC publicly and formally determined that Accurint® reports are not consumer reports. *See* FTC Opinion Letter to Marc Rotenberg at 1 n.1 (July 29, 2008), *available at* http://www.ftc.gov/sites/default/files/documents/cases/2008/08/080801reedrotenbergletter.pdf. The FTC made that determination in connection with a 2008 FTC investigation and administrative complaint relating to a hacking incident in which certain Accurint® identity reports were stolen. The FTC complaint recognized that Seisint (which at that time furnished Accurint® reports) "collect[s], maintain[s], and sell[s] information about consumers" and "sells products that customers use to locate assets and people, authenticate identities, and verify credentials." Compl. ¶ 5, *In re Reed Elsevier Inc.*, File No. 0523094, Docket No. C-4226 (FTC July 29, 2008), *available at* http://www.ftc.gov/sites/default/files/documents/cases/2008/08/080801reedcomplaint.pdf. Notably, the FTC's complaint alleged only a violation of the FTC Act (which covers unfair acts and practices), not a violation of the FCRA, which the FTC also enforces. *Id.* ¶ 15.

Before filing that complaint, the FTC published for public comment the proposed complaint and a proposed consent order to settle the claims. One commenter remarked that, unlike a prior FTC consent order, the proposed consent order did not provide for civil penalties. In a letter approved by a vote of the Commission and made part of the public record of the proceeding, the FTC responded that it had obtained civil penalties in the earlier settlement with a

different company because that case "involved credit reports and thus alleged violations of the Fair Credit Reporting Act ('FCRA'), which authorizes civil penalties." FTC Opinion Letter at 1 n.1. The agency then stated that, "[u]nlike that case," the one before it involving Accurint® reports "*do*[*es*] *not involve credit reports*." *Id.* (emphasis added).

### B.    Proceedings Below

#### 1.    *Plaintiffs' allegations*

Plaintiffs filed this putative-class-action suit, alleging that LexisNexis willfully violated the FCRA in three ways. A18-A19, A37-A39. First, they alleged that LexisNexis sold Accurint® reports without first obtaining a certification from the buyer that it was purchasing the report for a purpose permissible under the FCRA. A24, A28-A29. Second, several plaintiffs alleged that LexisNexis refused their requests to view certain information in their files. A24-A25, A29. Third, one plaintiff alleged that LexisNexis failed to investigate after he disputed the accuracy of information in an Accurint® report about him. A29.

The complaint proposed three corresponding classes of plaintiffs: (1) the "Impermissible Use" class, consisting of all persons with respect to whom LexisNexis sold an Accurint® report to a non-governmental user; (2) the "File Request" class, consisting of persons who requested their files from LexisNexis;

10

and (3) the "Dispute" class, consisting of all persons who filed disputes with LexisNexis about information in Accurint® reports.    A30-A36.    More than 100 million people potentially fall within the Impermissible Use class, and approximately 31,000 people fall within the File Request and Dispute classes. A53.

Plaintiffs requested statutory damages, actual damages, punitive damages, and costs and attorneys' fees.  A40.

### 2.    *The settlement process*

This is the third putative-class-action lawsuit that plaintiffs' counsel filed against LexisNexis with substantially the same allegations.  The first was *Graham v. LexisNexis Risk & Info. Analytics Mgmt. Grp., Inc.*, No. 3:09-cv-655-JRS (E.D. Va.).  The plaintiff there dismissed the claims after LexisNexis moved to dismiss for lack of standing.  Defs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction, *Graham*, No. 3:09-cv-655-JRS (E.D. Va. Sept. 2, 2010), ECF No. 88; Stipulation of Dismissal with Prejudice, *Graham*, No. 3:09-cv-655-JRS (E.D. Va. Jan. 21, 2011), ECF No. 92.

The second was *Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. CIV 08-4708 (D.N.J.).  According to objectors, *Adams* "rejected Lexis' position that Accurint is not a consumer report as a matter of law; then, the case settled." Objectors' Br. 4.  Objectors fail to mention that the *Adams* court explained on the

11

record that, in denying LexisNexis's motion for judgment on the pleadings, it was simply allowing discovery to proceed. The court further explained that unless discovery showed that the FTC had reversed its view, adopted by vote of the Commission in 2008, that Accurint® reports were not consumer reports for purposes of the FCRA, "summary judgment will be entered in the defendant's favor." A2370; *see* A2878 n.10. After hearing those statements, the plaintiffs in *Adams* amended their complaint to drastically restrict the class and then settled the case individually. Second Am. Class Action Compl., *Adams*, No. CIV 08-4708 (D.N.J. July 7, 2010), ECF No. 86; Order of Dismissal, *Adams*, No. CIV 08-4708 (D.N.J. Aug. 20, 2010), ECF No. 90.

Over the course of all three cases, plaintiffs' counsel and LexisNexis's counsel engaged in in-person mediation nine times. A607. After this suit was filed, the parties retained Randall Wulff, an experienced litigator with FCRA expertise, to serve as a mediator. A608. Mr. Wulff oversaw four separate in-person mediation sessions from May to August 2012. A608. Retired Magistrate Judge Dennis Dohnal also assisted in the mediations. A608. The last mediation session resulted in the general outlines of the settlement that ultimately was approved by the district court. A608-A609.

Then-Magistrate Judge M. Hannah Lauck oversaw the settlement process on behalf of the district court. A609. Once the settlement was reached, the parties

12

presented it to Judge Lauck, who commended the parties for reaching a fair compromise:

> I can tell you personally that I think you all have worked something out that is very difficult. I do think it is a sea change and a good one and a thoughtfully conducted one. On behalf of the sets of individuals involved, this does strike me both as a set of circumstances where you all have worked hard to see what's fair, to give up something you may not wish to have given up on. But then also sort of seeing the horizon, the commonsensible approach that's going to have to come at one point or another, and it would not be exactly what everybody wants. And I think you have worked very hard and it[']s evident in what you are presenting to me[.]

A609.

### 3.    *The settlement terms*

The settlement calls for the certification of two classes. A110-A145. The first, certified under Rule 23(b)(2) of the Federal Rules of Civil Procedure, consists of all persons in the United States about whom information resided in the Accurint® database during a defined period. A111. The settlement as to this class thus benefits nearly every consumer in the United States. The second class, certified under Rule 23(b)(3), corresponds with the combined File Request and Dispute classes, and provides monetary relief to tens of thousands of individuals. A133-A145.

### a.    The Rule 23(b)(2) class

The settlement guarantees extensive, prospective changes that afford the Rule 23(b)(2) class members and consumers throughout the United States significant benefits. LexisNexis will overhaul its Accurint® for Collections products, splitting them into two suites of products and services and providing significantly increased protections for each.

The first is called "Collections Decisioning." A118-A120. Collections Decisioning "will be treated and recognized by [LexisNexis] as falling within the FCRA's 'consumer report' definition." A118; *see* A120. This treatment will provide several substantial benefits to consumers. For example, LexisNexis will allow access to Collections Decisioning reports only for permissible purposes under the FCRA, including decisions concerning the extension of credit to a consumer, as well as review or collection of a consumer's account. A119; 15 U.S.C. § 1681b. Consumers will also have the right to view the information in their reports, free of charge in certain circumstances. 15 U.S.C. § 1681g. Consumers will be able to dispute information that they believe to be inaccurate, and LexisNexis will investigate. *Id.* § 1681i.

The second suite of products and services, called "Contact & Locate," will not be treated as FCRA consumer reports but will nonetheless still carry significant consumer protections. Contact & Locate will be created for the limited purpose of

14

assisting debt collectors to find debtors and to locate assets securing the debt for the purpose of repossession. A120-A121. Only information that bears on a consumer's or an asset's location will appear on the Contact & Locate report. A121. When a user enters into the Contact & Locate database, a message will be displayed stating: "Accurint Contact & Locate may not be used in whole or in part as a factor in determining eligibility for credit, insurance, or employment or for any other eligibility purpose that would qualify it as a consumer report under the FCRA." A122.

Even though Contact & Locate is not even arguably a consumer report for purposes of the FCRA, LexisNexis will provide consumers certain valuable rights that resemble those available for consumer reports. LexisNexis will create a Consumer Access Program for Contact & Locate, through which consumers may obtain an annual free copy of a Contact & Locate Comprehensive Report. A123. LexisNexis will permit consumers to submit statements of up to 100 words regarding any telephone number or address being used to contact them about a collection. A124. Consumers will be able to submit comments even if the telephone number or address is found in *another consumer's* report. A124. Significantly, the FCRA (if it applied) would not include such a requirement, as the 100-word statement required by the statute applies only to information appearing in the consumer's own report. 15 U.S.C. § 1681i(b).

15

Plaintiffs, as well as the district court and the magistrate judge, were provided and reviewed confidential details about the design of the Collections Decisioning and Contact & Locate products. A122.[1] Plaintiffs agreed that the present designs meet the agreed-to limitations on data and use in the settlement agreement. A122. Based on both their review of the confidential materials and the limitations in the settlement agreement, plaintiffs also "agree[d] that the Contact & Locate suite of products and services will not involve the provision of 'consumer reports' as that term is defined under the FCRA." A120-A121. Accordingly, and "[i]n consideration for the heightened protections that will be accomplished through the Injunctive Relief" (i.e., the Consumer Access Program), the "Named Plaintiffs, Class Counsel, and the Rule 23(b)(2) Settlement Class agree" for seven years that Contact & Locate reports "shall not be 'consumer reports' within the meaning of the FCRA so long as [Contact & Locate reports] are not used in whole or in part as a factor in determining eligibility for credit, insurance, or employment or for any other eligibility purpose that would qualify it as a consumer report under the FCRA." A132-A133.

In consideration for these valuable reforms, the Rule 23(b)(2) class agreed to waive the incremental remedies associated with willful FCRA violations—i.e.,

---

[1] Objectors had the right to review the same confidential materials but declined to exercise it. A1581.

statutory and punitive damages—as well as similar remedies under all FCRA state-law equivalents.  A129; *see* A110.  Class members retain the right, however, to seek individual actual damages for FCRA and state-law violations, as well as the right to seek statutorily authorized costs and attorneys' fees when pursuing such actions.  A130.  Class members waive only the class-action procedural device with respect to claims for actual damages.  A130-A131.

### b.    The Rule 23(b)(3) class

The settlement also includes a class of plaintiffs certified under Rule 23(b)(3).  A133-A145.  Objectors do not challenge the settlement as to this class.  This class consists of all persons who requested a copy of an Accurint® report about themselves or tried to dispute the information in a report.  A133-A134.  Under the settlement, LexisNexis will create a $13.5 million fund, which, after deduction of attorney's fees awarded, will be divided pro rata among the approximately 31,000 class members.  A135, A138-A142.  In return, the Rule 23(b)(3) class releases all FCRA claims (and all associated remedies, including actual damages) against LexisNexis.  A143-A145.

### 4.    *Approval of the settlement*

The parties moved jointly for preliminary approval of the proposed settlement agreement, and the district court granted the motion.  A611-A624.  The

district court subsequently overruled the objections, certified the classes, and approved the settlement.  A2859-A2884.

Rejecting objectors' contention that the settlement was not permitted under Rule 23(b)(2), the court explained that certification under that provision "is appropriate where final injunctive relief is sought and will settle 'the legality of the behavior with respect to the class as a whole.'"  A2876 (quoting *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 329 (4th Cir. 2006)).  Here, the court concluded, certification "is appropriate because the injunctive relief sought is indivisible and applicable to all members of the Rule 23(b)(2) class."  A2877.

The district court was not persuaded that "monetary claims predominate the Rule 23(b)(2) class claims" and that therefore the "lack of opt-out rights precludes final certification."  A2877.  The court explained that the overarching issue is LexisNexis's "conduct, which was uniform with respect to each of the class members."  A2878.  Accordingly, the court said, "the appropriate amount of statutory damages would also be uniform as to each of the class members, and is not 'individualized' because it is the product of rote calculation."  A2878.

The district court also found that the settlement "is fair, reasonable, and adequate."  A2880.  The court initially "note[d] that three highly skilled mediators have been involved in the negotiation of the Proposed Settlement Agreement." A2880.  But the most significant factor for the court was LexisNexis's agreement

to overhaul its Accurint® reports even though "the ultimate merit of Plaintiff's claims is far from certain." A2882. The court explained that "Plaintiffs' claims are predicated on Accurint® reports being deemed 'consumer reports' within the meaning of the FCRA," but "the FTC in 2008 voted unanimously that Accurint® for Collection reports do not fall within the FCRA." A2882. Thus, "[a]bsent some authority to the contrary, the merit of Plaintiffs' claims—and, necessarily, the absent class members' theoretical future claims—is speculative at best." A2882. Accordingly, the court concluded that "the benefit of substantial relief without the risk of litigation demonstrates the adequacy of the Settlement Agreement." A2882.

## SUMMARY OF ARGUMENT

The settlement, which provides valuable consumer protections without extinguishing Rule 23(b)(2) class members' FCRA claims or remedies for actual damages, is eminently fair and fully compliant with the requirements of Rule 23(b)(2) and due process.

I.     The Rule 23(b)(2) settlement is fair, reasonable, and adequate. This Court has identified the strength or weakness of plaintiffs' claims as the "[t]he most important factor" in evaluating the fairness of a class-action settlement, *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172 (4th Cir. 1975), and that factor decisively supports the fairness of the settlement here. Plaintiffs' claims were fundamentally flawed from the beginning: in light of the FTC's determination that Accurint®

reports are *not* consumer reports, plaintiffs could not have shown that LexisNexis's parallel decision not to treat Accurint® reports as consumer reports was a "willful" violation of the FCRA.  Yet a showing of willfulness would have been required before plaintiffs could have secured statutory or punitive damages.  15 U.S.C. § 1681n(a).  The settlement in which plaintiffs give up those highly doubtful remedies in return for substantial prospective benefits is fundamentally fair.

Objectors' arguments fail to demonstrate that the district court clearly abused its discretion in approving the settlement.  Contrary to objectors' suggestion, there is no rule requiring that a waiver of any sort of damages remedy must be exchanged for monetary payments to class members to be fair.  Here, the class members obtain valuable non-pecuniary benefits in consideration for agreement to relinquish statutory and punitive damages that they were unlikely to ever obtain.  And they remain free to pursue claims for actual damages individually.

The fact that (b)(3) class members will receive monetary relief does not make the (b)(2) settlement unfair because the two groups are not similarly situated. The (b)(3) class members took action before the settlement (by either requesting a copy of their report or disputing information in it) and thus arguably have claims of individualized injury.  Moreover, the (b)(3) class releases a broader set of remedies than does the (b)(2) class:  the (b)(3) class releases *all* FCRA claims including

20

those seeking actual damages, while members of the (b)(2) class release *no* claims and do *not* waive the right to pursue actual damages.

Finally, contrary to objectors' characterization, the settlement does not immunize LexisNexis from future liability for the new Contact & Locate product. There is no waiver or immunity included in the settlement. Instead, plaintiffs merely recognize that the product, *as described in the agreement*, is not a consumer report. That recognition is unquestionably correct. Moreover, should LexisNexis implement Contact & Locate in a way that departs from the settlement agreement and violates the FCRA, nothing in the agreement would protect it from liability.

II.     The district court also did not abuse its discretion in certifying a class under Rule 23(b)(2) in the context of a settlement that provides the (b)(2) class members only injunctive relief. A (b)(2) class is appropriate where the relief awarded is an indivisible injunction applicable to the class as a whole. That precisely describes the (b)(2) class here: the injunctive relief requiring changes to LexisNexis's products benefits all class members, and there is no way for any individual to decline it.

None of objectors' arguments against certification of the Rule 23(b)(2) settlement class has merit. There is no bright-line rule precluding (b)(2) certification where the statute giving rise to the cause of action provides only for

monetary damages, not injunctive relief.  LexisNexis is free to agree to a consent decree with remedies not provided in the statute, and the district court's power to enforce those remedies comes from the agreement itself.  Likewise, it is not correct that if the complaint originally sought only monetary relief, (b)(2) certification can never be appropriate.  Rule 23(b)(2) focuses on the relief awarded, not the relief requested in the complaint, and parties must be free to adjust their remedial demands to secure a fair settlement.

Objectors' extended discussion of whether a claim for monetary relief predominates over, or is instead incidental to, injunctive relief—thus requiring opt-out rights—is beside the point.  The (b)(2) settlement agreement includes no statutory damages, so, by definition, those non-existent damages cannot predominate over the agreement's injunctive relief.  Moreover, class members remain free to pursue actual damages remedies as individuals.  Accordingly, individual claims for damages by injured plaintiffs are automatically opted out by the very structure of the settlement agreement.

Nor is there any due-process right to opt out of a (b)(2) class that waives certain monetary remedies while awarding injunctive relief.  The Due Process Clause does not entitle objectors to secure double relief, i.e., the injunction *and* the opportunity to seek all available monetary relief individually.  That is especially true here, where individual plaintiffs are free to pursue individual claims for actual

damages. Moreover, the substantial procedural protections of Rule 23 are sufficient to fully protect objectors' due-process rights.

## STANDARD OF REVIEW

This Court reviews a district court's decision to approve a class-action settlement only for "clear abuse of discretion." *Flinn*, 528 F.2d at 1172. This Court is "not, in reviewing the settlement, to 'substitute [its] ideas of fairness for those of the district judge.'" *Id.* (citation omitted). Instead, this Court's "power . . . is only to be exercised 'upon a clear showing that the district court abused its discretion' in approving the settlement." *Id.* (citation omitted); *see Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010). "Because a district court possesses greater familiarity and expertise than a court of appeals in managing the practical problems of a class action, its certification decision is entitled to 'substantial deference,' especially when the court makes 'well-supported factual findings supporting its decision.'" *Ward*, 595 F.3d at 179 (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 421, 434 (4th Cir. 2003)).

## ARGUMENT

### I.    THE RULE 23(b)(2) SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND OBJECTORS FAIL TO DEMONSTRATE THAT THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION IN SO CONCLUDING

To approve a proposed class-action settlement that is binding on class members, the district court must find that the settlement is "fair, reasonable, and

23

adequate." Fed. R. Civ. P. 23(e)(2). The district court here evaluated the strengths and weaknesses in the parties' positions, considered the long history of related litigation and the efforts counsel went through to obtain the hard-fought settlement, and weighed these factors against the costs and benefits to the class members. Carefully performing this fact-intensive inquiry, the district court found that the settlement is fair, reasonable, and adequate. That finding is well supported by the record and was comfortably within the district court's discretion to make.

### A. The Settlement Is Eminently Fair In Light Of The Substantial Obstacles Plaintiffs' Claims Would Have Faced On The Merits

"Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Indeed, this Court has explained that "[t]he most important factor to be considered in determining whether there has been . . . a clear abuse of discretion" in approving a class-action settlement "is whether the trial court gave proper consideration to the strength of the plaintiffs' claims on the merits." *Flinn*, 528 F.2d at 1172; *see City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) ("If the settlement offer was grossly inadequate, . . . it can be inadequate only in light of the strength of the case presented by the plaintiffs."). Here, the

24

plaintiffs' claims had little chance of success.[2]  In light of the grave obstacles that plaintiffs would have faced had they continued pursuing statutory and punitive damages, the settlement is eminently fair.  At the very least, the district court did not *clearly* abuse its discretion in so finding.  *Flinn*, 528 F.2d at 1172.

### 1. The (b)(2) class had little chance of obtaining statutory or punitive damages because there was no willful violation of the FCRA

Objectors fail to grapple with the unlikelihood of the (b)(2) class members' ever recovering the remedies released by the settlement had they continued litigation.  Yet the fairness of the settlement must be examined through that lens. *See Flinn*, 528 F.2d at 1172 ("strength of the plaintiffs' claims" is the "most important factor" in evaluating fairness of settlement).

a.    To obtain statutory damages under the FCRA, plaintiffs must establish that a consumer reporting agency "*willfully* fail[ed] to comply with" a requirement of the statute.  15 U.S.C. § 1681n(a) (emphasis added).  The Supreme Court has held that to willfully violate the FCRA, a defendant must act either knowingly or in reckless disregard of its statutory obligations.  *See Safeco*, 551 U.S. at 52.  "[A] company subject to FCRA does not act in reckless disregard of it unless the action

---

[2] Objector Schulman, an appellant in this Court, agrees that plaintiffs' claims lack merit.  *See* Objectors' Joint Opp'n to Lexis' Mot. to Allow Defs.-Appellees & Pls.-Appellees to File Separate Resp. Brs. at 3 (Jan. 2, 2015).

25

is not only a violation under a reasonable reading of the statute's terms, but [also] shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

If (unlike in this case) a company's view of its FCRA obligations is erroneous, there is no willful violation as long as the company's view is not "objectively unreasonable." *Id.* Indeed, the Supreme Court has explained that where "the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator." *Id.* at 70 n.20; *see* A2882.

Plaintiffs here would not have been able to show that LexisNexis willfully violated the FCRA by not treating Accurint® for Collections reports as consumer reports. It was far more than objectively reasonable for LexisNexis to conclude that Accurint® reports are not consumer reports, given that this is the same conclusion that the FTC reached. The FTC specifically contrasted the Accurint® for Collections reports with other reports that are consumer reports within the FCRA's scope. FTC Opinion Letter at 1 n.1; *see supra* pp. 9-10. The FTC explained that it could not assess civil penalties under FCRA with respect to the Accurint® reports because they are not "credit reports" and are therefore not within the scope of the statute. FTC Opinion Letter at 1 n.1. This was an authoritative

26

and definitive statement by the agency to which Congress had delegated administration of the statute. 15 U.S.C. § 1681s(a)(1); *Estiverne v. Sak's Fifth Ave.*, 9 F.3d 1171, 1173 (5th Cir. 1993) (per curiam).

In *Safeco*, the Supreme Court found it significant that the business there did not have "the benefit of guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took." 551 U.S. at 70. There, the "dearth of guidance and the less-than-pellucid statutory text" rendered the business's view not objectively unreasonable. *Id.* Here, not only was there no FTC guidance warning LexisNexis *away from* its view that Accurint® reports are not consumer reports, but the FTC issued guidance specifically *agreeing* with LexisNexis's view.

Even apart from the FTC's support for LexisNexis's view, LexisNexis was anything but reckless in determining that its Accurint® for Collections reports are not consumer reports under the FCRA. To constitute a consumer report, the report must be "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's *eligibility* for" credit, insurance, employment, or other permitted purposes. 15 U.S.C. § 1681a(d)(1) (emphasis added). Accurint® for Collections is not used or expected to be used for any "eligibility" purposes. The reports instead assist debt collectors in locating individuals for the purpose of *collecting* a debt. A51. Indeed, Accurint® for

27

Collections is marketed with the direction that it "may not be used in whole or in part as a factor in determining eligibility for credit, insurance, employment or another permissible purpose under the FCRA." A52.

b.    As they did below, objectors place heavy emphasis on a different district court's denial of LexisNexis' motion for judgment on the pleadings in *Adams*, one of the earlier putative class actions filed by plaintiffs' counsel. Objectors argue that *Adams* "rejected Lexis' position that Accurint is not a consumer report as a matter of law." Objectors' Br. 4. Objectors assert that the plaintiffs in *Adams* won "a major battle" because *Adams* supposedly established that Accurint® reports are consumer reports under the FCRA, thereby "ma[king] Lexis immediately vulnerable to the (b)(2) Class Members' claims" for willful violations. *Id.* at 39.

As the district court here pointed out, objectors fundamentally mischaracterize the *Adams* decision and ignore what actually occurred in that case. A2878 n.10 ("While Plaintiffs and the objectors argue that the *Adams* court held Accurint® reports to be subject to the FCRA, the Court appears to have disavowed such a holding."). Indeed, *Adams* actually shows that the plaintiffs' claims here would have been unsuccessful. The *Adams* district court stated on the record that the FTC's determination that Accurint® reports are not consumer reports was

28

enough to conclusively establish that there was no willful FCRA violation and that
there thus could be no liability:

> [T]he defendant, rightly so, has relied upon the FTC's
> statement -- fair enough, they should -- . . . and the
> defendant's argument is this has not been clearly
> established and therefore they cannot be found liable
> under *Saf*[*e*]*co* for punitive damages. *That is all correct.*

A2368 (emphasis added).

The *Adams* court explained that it denied the motion for judgment on the
pleadings simply to give the plaintiffs there an opportunity to attempt to find and
produce contrary authority from the FTC:

> THE COURT: Okay. Mr. McCabe [LexisNexis's
> counsel], I know this is going to come as [a] surprise to
> you, but I agree with everything you have said. Here's
> my question, however, and I think that is why I think
> there has been some misinterpretation of what my ruling
> [denying LexisNexis's motion for judgment on the
> pleadings] was. The problem that I have is that we are at
> a judgment on the pleadings stage. That's the problem.
> And the best way that I can articulate that to you is let me
> ask you a hypothetical. What if there were superseding
> contrary FTC authority and discovery so revealed?
>
> . . . .
>
> We're not at the summary judgment stage, the
> authority hasn't been fleshed out, the plaintiffs may very
> well discover the smoking gun from the FTC that you
> folks may or may not know about. I don't know.
>
> . . . .

I remain of an open mind until the discovery is closed in this case. *I just don't agree with the plaintiff's position that this was clearly established. I don't.* But, I don't need to decide that now because, as I tried to lay out in my original opinion, let's wait and see.

A2367-A2368, A2370, A2383.

But the court reiterated that without such a "smoking gun" from the FTC, summary judgment would be entered for LexisNexis:

If, at the end of the day, the plaintiffs don't come forward with authority to the contrary of what the defendants have proffered to me, then I think the plaintiffs have a difficult row to hoe. . . .

. . . .

At the end of the day if what you say is so, that there is no other contrary authority, *then it seems to me summary judgment will be entered in the defendant's favor.*

A2368, A2370. Plaintiffs in *Adams* never produced any contrary authority from the FTC (as there is none). But the district court's colloquy in *Adams* underscores the reasonableness (indeed, the correctness) of LexisNexis's view and the futility of the (b)(2) class members' effort to obtain statutory and punitive damages.

### 2. *The district court properly evaluated the fairness of the settlement in light of plaintiffs' low likelihood of success*

In evaluating the fairness of a proposed settlement, the district court need only employ proceedings that are "adequate to reach 'an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated' and

'form an educated estimate of the complexity, expense and likely duration of such litigation, . . . and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'" *Flinn*, 528 F.2d at 1173. "If that procedure is followed, a trial court has acted properly in determining whether to approve the proposed settlement or not." *In re A.H. Robins Co.*, 880 F.2d 709, 749 (4th Cir. 1989).

The district court in this case followed that procedure and appropriately evaluated the relative strengths of each side's position in determining the fairness of the settlement. A2880-A2882. Although the settlement requires the (b)(2) class to waive statutory and punitive damages, the district court correctly observed that those remedies were exceedingly unlikely to be obtained. A2882. The district court explained that LexisNexis "cannot be held liable as a willful violator" if it was "reasonable" to conclude that Accurint® reports are not consumer reports under the FCRA. A2882. The FTC's conclusion demonstrates the reasonableness of that conclusion. A2882. The district court explained that "[a]bsent some authority to the contrary, the merit of Plaintiffs' claims—and, necessarily, the absent class members' theoretical future claims—is speculative at best." A2882. Yet, notwithstanding the fundamental weaknesses in plaintiffs' claims, the settlement affords the (b)(2) class "the benefit of substantial relief [i.e., injunctive remedies] without the risk of litigation." A2882. Moreover, the district court

31

found that "the duration and expense of additional litigation in the absence of a settlement would be significant." A2881.

Because the district court adequately and appropriately evaluated the proposed settlement in light of the speculative nature of the relief waived by the class, it was well within the district court's discretion to find that the settlement "presents a fair, reasonable, and adequate bargain." A2882; *see A.H. Robins*, 880 F.2d at 749.

## B. The Procedural Aspects Of How The Settlement Was Attained Confirm That It Is Fair

The district court also found indicia of fairness in the fact that "the Parties reached an agreement through arm's-length negotiations by highly experienced counsel after full discovery was completed." A2881. These are circumstances that create a presumption that the settlement is fair. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (quoting Manual for Complex Litigation (Third) § 30.42 (1995))); *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.").

32

The settlement here was hard fought, reached only after a multitude of in-person meetings over a series of years. Indeed, the settlement is the culmination of three different lawsuits filed against LexisNexis by the same counsel, alleging essentially the same FCRA claims. The parties' counsel are capable and well experienced. The parties utilized "three highly skilled mediators" to oversee the negotiations, including two magistrate judges (one sitting and one retired). A2880. There is no suggestion at all of collusion or anything other than a good-faith, arms-length bargaining process. The process thus confirms the fairness of the settlement, which already is clear from the settlement's terms themselves.

### C.     Objectors Fail To Demonstrate A Clear Abuse Of Discretion

Objectors make several arguments claiming that the settlement is not fair, but none of them succeeds in showing a clear abuse of discretion. *Flinn*, 528 F.2d at 1172.

#### 1.     *The settlement did not have to provide the (b)(2) class monetary relief to be fair*

Objectors proffer a bright-line rule that a settlement that waives monetary-damages "claims" without providing for any monetary payment to the class members "is *per se* unfair." Objectors' Br. 37. This contention rests on a misunderstanding of the settlement agreement and is legally unsupported.

As an initial matter, objectors' argument ignores the fact that the settlement does not release any claims at all. It waives only certain remedies—statutory and

punitive damages—that require a showing of willfulness and that would have been almost certainly unavailable to plaintiffs had they continued litigation. Class members retain the right to seek actual damages (under a lesser showing of negligence) for any harms incurred due to LexisNexis's alleged violations of the FCRA or similar state laws. *See* 15 U.S.C. § 1681o. It is therefore not correct that the (b)(2) settlement extinguishes all monetary relief. *Contra* Objectors' Br. 37.

In any event, objectors' proposed bright-line rule requiring settlements to provide monetary relief in all cases where it was originally sought is totally unsupported. Rather, fairness is judged based on "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). Claims for monetary relief may be settled fairly without any monetary recovery. *See Zimmerman v. Bell*, 800 F.2d 386, 391 (4th Cir. 1986) (rejecting objector's contention that injunctive relief in settlement was "necessarily inadequate in the absence of some monetary relief"). "Influencing the future conduct" of the defendant may provide relief as fully as monetary recovery for past violations. *Id.*; *see Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993); *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1207 (6th Cir. 1992); *Maher v. Zapata Corp.*, 714 F.2d 436, 466 (5th Cir. 1983).

34

The decisions on which objectors rely (Objectors' Br. 40-42) do not hold that fairness requires that monetary recovery be provided as part of a settlement of monetary-damage claims. For example, in *Mirfasihi v. Fleet Mortgage Corp.*, the members of one class were to receive "nothing"—no monetary *or* injunctive relief. 356 F.3d 781, 782-83 (7th Cir. 2004). Similarly, in *Crawford v. Equifax Payment Services, Inc.*, the settlement provided no relief at all (not even non-pecuniary), as the defendant had already stopped the challenged practice long before the settlement was reached. 201 F.3d 877, 882 (7th Cir. 2000).[3]

### 2. The settlement provides the (b)(2) class non-pecuniary benefits that are more valuable than a token monetary payment to each class member would have been

Objectors' singular focus on monetary relief ignores the substantial and valuable non-pecuniary benefits secured for the (b)(2) class members in the settlement, in consideration for the waiver of statutory and punitive damages remedies. The injunctive relief in the settlement will provide the (b)(2) class

---

[3] The district court's decision in *Acosta v. Trans Union, LLC*, also is inapposite, as the defendants in that case (Trans Union and Equifax) are quintessential credit reporting agencies, and there is no question that the reports at issue were FCRA consumer reports. 243 F.R.D. 377, 379 (C.D. Cal. 2007). On those facts, the plaintiffs there had a much stronger case than plaintiffs did here. And in any event, the fact that the district court in *Acosta* exercised its discretion, based on the specific facts of that proposed settlement, to conclude that it was not fair does not establish that the district court's decision to approve the settlement here is a clear abuse of discretion.

members (and all other consumers) important rights and protections that they do not have under current law.

LexisNexis's agreement to treat its new Accurint® Collections Decisioning product as an FCRA-covered consumer report "represents a serious advancement of consumer rights by a dominant member of the data broker industry." A583. By agreeing to treat the reports as consumer reports, LexisNexis has committed to (1) implement procedures assuring the maximum possible accuracy of the information in its new Accurint® Collections Decisioning reports; (2) obtain from its customers their agreement to use the information in the reports only for certain statutorily prescribed uses; (3) provide consumers with full file access and disclosure, free of charge in certain circumstances; (4) investigate consumers' disputes regarding information in a report; and (5) delete information about a consumer that any such investigation has shown to be inaccurate or unverifiable. 15 U.S.C. §§ 1681b, 1681e(b), 1681g, 1681i. Just the right to receive a free copy of the Collections Decisioning report annually is worth approximately $160 million a year to consumers. A587. That aspect of the settlement by itself thus provides every class member an annual opportunity to obtain a concrete, tangible benefit with real monetary value.

Objectors belittle the injunctive relief here, claiming it is no more than a "promise by Lexis to stop breaking the law." Objectors' Br. 38; *see id.* at 42. But

as discussed above, established law strongly supports LexisNexis's position that the FCRA does not apply to Accurint® reports. LexisNexis is thus agreeing to take steps not required by law. In fact, shortly after this case was filed, the FTC confirmed that data brokers in the debt-collection industry operate outside the FCRA in a yet-to-be-defined regulatory environment. FTC, *Protecting Consumer Privacy in an Era of Rapid Change: Recommendations for Businesses and Policymakers*, at 65-67 (Mar. 2012) ("[S]ome businesses may maintain and use consumer data for purposes that do not fall neatly within either the FCRA or marketing categories discussed above. . . . They may include debt collectors trying to collect a debt.").

Indeed, one of the most significant benefits afforded in the settlement is LexisNexis's agreement to deem the Accurint® Collections Decisioning suite of products as consumer reports. As discussed above, proving that a particular report is clearly established as an FCRA consumer report can be extremely difficult under the *Safeco* standard. Many decisions have recognized the lack of clarity in the FCRA's definition of "consumer report" as it pertains to companies, like LexisNexis, that are not credit bureaus but that assemble information about consumers. *See, e.g.*, *Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241, 251-54 (3d Cir. 2012). This is due in no small part to the circular definition of "consumer report" and "consumer reporting agency"—i.e., a consumer reporting agency is a

37

company that furnishes consumer reports, and consumer reports are reports furnished by a consumer reporting agency. 15 U.S.C. § 1681a(d), (f); *see Owner-Operator Indep. Drivers Ass'n v. USIS Commercial Servs., Inc.*, 537 F.3d 1184, 1191 n.8 (10th Cir. 2008). The settlement prospectively resolves this uncertainty in the law as applied to LexisNexis's products, providing clarity and establishing the rights and obligations between LexisNexis and class members, in a way that existing law fails to do.

Eliminating uncertainty provides a substantial benefit to both the class members and LexisNexis. For the class members, the treatment of Accurint® Credit Decisioning reports as consumer reports provides the certainty of FCRA consumer protections (and recourse if they are violated). For LexisNexis, the agreement provides clarity—absent in the statute and agency guidance—to guide the management of its operations and investments in new endeavors. Litigating this issue to judgment, by contrast, would have taken many years and imposed additional costs on all parties.

Moreover, even though it is not required by law, LexisNexis will become the only public-record vendor to implement substantial consumer protections for a product intended purely to provide location data—its new Contact & Locate products. Significantly, LexisNexis has agreed not to include in these reports any of the seven characteristics of a consumer's credit or personal history that bear on

any eligibility determination under the FCRA, unless the information bears a reasonable relationship to the location of a debtor or assets. A121. Consumers will also gain many other rights with respect to these reports—including the right to receive a free copy and to submit a statement about information in the reports—none of which is required by law. A123-A125.

In light of these substantial non-pecuniary benefits, the settlement is more than fair to the (b)(2) class. A de minimis monetary payment to each class member would have been *less* valuable than these non-pecuniary benefits. And in any event, there was no realistic possibility that LexisNexis would have agreed to a settlement containing even a token payment to members of the (b)(2) class. Even a payment of just one dollar to each member of the (b)(2) class would have cost LexisNexis more than $100 million. Yet that enormous pay-out would not have provided LexisNexis any certainty about the legal status of its products or freed it of further litigation. And LexisNexis never would have agreed to such an expenditure in light of the fundamental weakness of the class members' position on statutory and punitive damages. For all these reasons, a settlement providing even de minimis monetary relief to the (b)(2) class members would have been infeasible.

### 3. The settlement's different treatment of the (b)(2) and (b)(3) classes is reasonable and fair

Objectors argue that the claims of the (b)(2) and (b)(3) classes all "turn on the same issue: whether Lexis' Accurint report is a 'consumer report' for purposes of FCRA." Objectors' Br. 43. Objectors thus contend that "[i]f an Accurint report is a 'consumer report,' then Lexis is equally liable" to both groups. *Id.* From this, objectors posit that the award of monetary relief to the (b)(3) class but not the (b)(2) class is unfair. *Id.*

Objectors ignore the fundamental difference in the two groups' experience with Accurint® reports. Membership in the (b)(3) class is limited to persons who asked to view their Accurint® reports or tried to dispute information included in the reports. The (b)(3) class members therefore expended some effort in pursuit of a right they believed existed under the FCRA. Members of the (b)(2) class, by contrast, never made any such requests. At most, they allege purely technical violations of the statute involving LexisNexis's interactions with *other parties*, such as a claim that LexisNexis should not have sold those parties Accurint® reports without securing FCRA-required certifications.

That plaintiff-based distinction is reflected in the settlement's treatment of the two groups. The members of the (b)(2) class secure valuable injunctive relief and do not release their underlying claims. Rather, they waive only the remedies for willful violations of the FCRA (statutory and punitive damages), remedies they

40

almost certainly could not have obtained because of the *Safeco* willfulness standard. Any (b)(2) class member who did somehow suffer an actual injury may still pursue a claim against LexisNexis for actual damages for such injury.

The (b)(3) class, by contrast, receives financial compensation as part of the settlement itself because of their fundamentally different experience with Accurint® reports. In exchange for that compensation, those class members agree to a *broader* release than does the (b)(2) class. In particular, the (b)(3) class agrees not only to waive statutory and punitive damage remedies with respect to those claims but also to release the claims altogether. Accordingly, no member of the (b)(3) class may pursue an individual claim for actual damages. Those claims are extinguished. That broad release in the (b)(3) class settlement, as well as the different experience of those class members with Accurint® reports, fully justifies their receipt of financial compensation not afforded to the (b)(2) class.

### 4. *The settlement does not "fail[] to provide (b)(2) Class Members with viable FCRA claims anything more than it provides those members with no viable claims"*

Objectors claim that the settlement does not distinguish between (b)(2) class members with "viable" FCRA claims and members with "no viable" claims. Objectors' Br. 44-45. The (b)(2) class includes consumers who were the subject of LexisNexis-maintained records but not Accurint® reports sold to third parties, and

objectors contend that the settlement unfairly treats these individuals the same as those about whom Accurint® reports were sold. *Id.*

The principal fallacy with this argument is its assumption that *any* (b)(2) class members have viable FCRA claims. Indeed, objectors' own brief demonstrates that *none* of the (b)(2) class members has viable claims. Their brief explains that "'the actionable harm the FCRA envisions is improper disclosure, not the mere risk of improper disclosure.'" *Id.* at 44 (quoting *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 (5th Cir. 2000)). But (assuming the Accurint® reports are consumer reports, which they are not) there is no allegation that the (b)(2) class members' reports were ever improperly disclosed to a buyer with an impermissible purpose for obtaining them. A29. There is, therefore, no actionable harm as to any of the (b)(2) class members, even under objectors' own theory.

In any event, there is no basis to distinguish between individuals about whom LexisNexis maintained information but did not sell a report and individuals about whom LexisNexis sold a report. The FCRA not only prohibits disclosure for impermissible purposes, but it also affords consumers rights with respect to "files" maintained by consumer reporting agencies, even where no consumer report has been sold. *See, e.g.*, 15 U.S.C. §§ 1681c-1 (fraud and identity theft alerts in file upon request), 1681c-2 (right to block of information in file arising from identity

42

theft), 1681g (right to receive information in file), 1681i (investigation of accuracy of information in file). Thus, if the FCRA applied to Accurint® reports, all persons subject to a file at LexisNexis, and not just those about whom a report was sold, would have potential FCRA claims. The (b)(2) class is defined accordingly.

### 5. *The settlement does not impermissibly immunize LexisNexis from future liability for the new Contact & Locate product*

Contrary to the suggestion of objectors (Objectors' Br. 45-46) and their amicus, Professor James Grimmelmann, the settlement does not contain impermissible "immunity" or a "waiver of liability" for future claims with respect to the Contact & Locate product.

As part of the settlement, LexisNexis has scaled back part of its Accurint® products into a smaller product for debt collectors that contains only information about the location of a debtor or the location of assets securing debt for the purpose of repossession. A121. LexisNexis's customers' "contractual commitments and certifications" must be consistent with use of the reports in a "non-FCRA" manner—i.e., LexisNexis's customers may not use the reports to determine eligibility for credit, employment, or other FCRA purposes. A122. LexisNexis also is providing consumer protections for seven years that in some respects are *greater* than the protections afforded if the FCRA applied to these reports. Consumers may submit a statement of up to 100 words regarding *any* phone number or address being used to contact the consumer about a debt being

43

collected, not only the information in the consumer's own file.  A124.  By virtue of entering into a consent decree, LexisNexis submits itself to the jurisdiction of the district court to ensure compliance with these provisions.

Objectors argue that the settlement is not fair because the agreement "releases Lexis from *any* future FCRA liability regarding" Contact & Locate, which "may or may not violate FCRA when developed."  Objectors' Br. 45 (emphasis added).  Amicus similarly contends that "[u]nder the proposed settlement, Contact & Locate will be *immune* from the FCRA . . . no matter what form Contact & Locate takes or how Lexis implements it, and regardless of whether Contact & Locate complies with the FCRA."  Amicus Br. 7 (emphasis added).

These contentions are based on a fundamental mischaracterization of the settlement agreement, which includes no waiver or release of liability for Contact & Locate.  Instead, the settlement includes a recognition that the product *as described in the agreement* is not a consumer report:  "In consideration for the heightened protections that will be accomplished through the Injunctive Relief," the class members agree that for the seven-year period of the injunction, the reports described in the settlement agreement "shall not be 'consumer reports' within the meaning of the FCRA."  A132.  There is no waiver or release of the right to challenge Contact & Locate, nor is there immunity from suit.  A151-A152.  The

44

agreement is simply that a particular product, as described, does not constitute a consumer report—a fact with which no one can reasonably disagree.

Although Contact & Locate had not been completely built by the time of the settlement, the agreement defines the product in such a way that makes clear it cannot even arguably be a consumer report within the FCRA. The reports will contain only information for the purpose of locating individuals and assets, and it will be impermissible to use the reports to determine eligibility for FCRA-related purposes. A121-A122. Neither objectors nor their amicus attempt to explain how such a product could possibly be deemed a consumer report for purposes of the FCRA. Indeed, this product is nearly identical to an example provided by the FTC of a product that is *not* a consumer report: "For example, a 'skip tracer' report of prior addresses used solely to locate an uninsured automobile driver is not an investigative or other 'consumer report' if it would not be used to determine eligibility for credit, employment, insurance, or other permissible business purposes allowed by the FCRA." FTC, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations*, at 20 (July 2011), *available at* http://www.ftc.gov/sites/default/files/documents/reports/ 40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary- interpretations/110720fcrareport.pdf.

The district court, the mediators, and plaintiffs examined confidential details about Contact & Locate and determined that it would fully comply with the requirements of the settlement agreement. A120-A122; A3056. The materials included sample screenshots showing how users would interact with the Contact & Locate product, as well as sample reports that are returned when users search within the Contact & Locate database. A3061-A3075. These materials plainly demonstrate that Contact & Locate reports cannot plausibly be considered consumer reports under FCRA. Contact & Locate reports contain only details such as a person's address and contact information, employment information, professional licenses, driver's licenses, and real-property information. A3062-A3070. To access potential FCRA information—such as bankruptcies, judgments, liens, and mortgages—a user must enter the Collections Decisioning product and input the FCRA-permissible purpose for which the information will be used. A3071-A3075. Objectors never became signatories to the district court's protective order and accordingly never reviewed these confidential materials, A1581; consequently, their objections to the product are completely uninformed.

Objectors' and amicus' principal concern seems to be that LexisNexis may implement Contact & Locate in violation of the terms in the settlement agreement or change the product over time such that it morphs into a consumer report, and that the class members will be powerless to respond. That concern is unfounded:

any such implementation or modification would subject LexisNexis to the enforcement authority of the district court as well as potential FCRA liability. The settlement agreement provides that any revisions to Contact & Locate must "otherwise meet the requirements of the Injunctive Relief." A126. Additionally, the agreement provides that the class members may challenge the implementation of Contact & Locate in court. A151-A152. LexisNexis will thus remain subject to the jurisdiction of the district court, which could order LexisNexis back into compliance if it modified Contact & Locate in a way that violated the terms of the settlement.

Moreover, the class members have agreed only that Contact & Locate reports are not FCRA consumer reports "*so long as* the [reports] are not used in whole or in part as a factor in determining eligibility for credit, insurance, or employment or for any other eligibility purpose that would qualify it as a consumer report under the FCRA." A132-A133 (emphasis added). If LexisNexis were to modify Contact & Locate so that the reports were in fact used to determine such

eligibility, plaintiffs' agreement that Contact & Locate is not a consumer report would no longer apply. Thus, all of objectors' and amicus's fears are baseless.[4]

Assurance about the legality of Contact & Locate (as described in the settlement agreement) is a critical component of the overall compromise under which LexisNexis agrees to substantially overhaul its current line of products. For the settlement to be fair to LexisNexis, the company must be able to ensure that it has a genuine resolution of this dispute. *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 247-48 (2d Cir. 2011) ("Parties often reach broad settlement agreements encompassing claims not presented in the complaint in order to achieve comprehensive settlement of class actions, particularly when a defendant's ability to limit his future liability is an important factor in his willingness to settle."). Based on the substantial benefits that LexisNexis agreed to provide under the settlement, LexisNexis should be permitted

---

[4] The injunctive relief provided in the settlement required LexisNexis to make a "reasonable and good faith effort[]" to meet a December 31, 2013 deadline to: (a) release the initial versions of Collections Decisioning and Contact & Locate; (b) market the new products to all new customers; (c) "migrate" existing customers to the new products; and (d) implement the Consumer Access Program. A2894-A2895. Although the settlement provides any class member the right to challenge LexisNexis's implementation of these products in the district court, A151-A152, the district court's docket does not reflect any such filing by any party (including objectors) complaining about LexisNexis's implementation of Contact & Locate.

48

to sell its Contact & Locate products without fear of repeated litigation concerning its purported obligations under a statute that plainly does not apply to it.

Even if the settlement agreement were understood to contain a waiver of future claims (which it does not), federal class action settlements routinely include releases of future claims. *See, e.g.*, *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1254-55 (11th Cir. 2001); *Williams v. General Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 274 (7th Cir. 1998); *In re Chicken Antitrust Litig.*, 669 F.2d 228, 239 (5th Cir. 1982). "Broad class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country. Practically speaking, class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability." *Wal-Mart*, 396 F.3d at 106 (alteration and internal quotation marks omitted).

Finally, amicus argues that the supposed "release" concerning Contact & Locate violates the "identical factual predicate" doctrine. Amicus Br. 18-22. Under that doctrine, where a settlement encompasses and releases "claims not presented directly in the complaint," the claims "must be 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Literary Works*, 654 F.3d at 248 (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)). As an initial matter, this doctrine does

not apply because the settlement does not release claims, but only certain forms of relief, *see supra* pp. 33-34, and it does not waive class members' rights as to Contact & Locate, *see supra* pp. 44-47.

In any event, amicus's argument is premised on the notion that Contact & Locate is an entirely new, different product not addressed by the claims in the complaint. But the factual predicate of any claims as to Contact & Locate is the same as the claims asserted in the complaint. Contact & Locate is simply a stripped-down version of Accurint® for Collections, the subject of this lawsuit. A120-A122; A3063-A3070. Thus, all the information included in Contact & Locate reports was included in Accurint® for Collections reports that were the subject of the original complaint. The factual predicate is therefore the same: if this case had proceeded rather than settled and if Accurint® for Collections were found not to be a consumer report, Contact & Locate likewise could not be a consumer report. *Literary Works*, 654 F.3d at 248 (factual predicate is the same if "a trial of this case would determine whether" purportedly new conduct is permissible).

## II.    OBJECTORS FAIL TO DEMONSTRATE THAT THE DISTRICT COURT ABUSED ITS DISCRETION IN CERTIFYING A CLASS OF PLAINTIFFS UNDER RULE 23(b)(2)

The district court also did not abuse its discretion in certifying a class under Rule 23(b)(2) in the context of a settlement that provides the members of the (b)(2) class only injunctive relief.

### A.    A Rule 23(b)(2) Class Is Appropriate Where, As Here, The Relief Awarded Is Injunctive Relief Applicable To The Class As A Whole

A class may be certified under Rule 23(b)(2) if the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) certification is appropriate "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011). Rule 23(b)(2) was "intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate." Fed. R. Civ. P. 23(b)(2) advisory committee's note. Thus, "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class

51

members or as to none of them.'" *Dukes*, 131 S. Ct. at 2557 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

As the district court found, LexisNexis's settlement with the Rule 23(b)(2) class complies with that rule's express requirements. The injunctive relief awarded in the settlement "is indivisible and applicable to all members of the Rule 23(b)(2) class." A2877; *see* A2877 ("The Parties have negotiated meaningful, valuable injunctive relief that will accrue to all members of the Rule 23(b)(2) class."). Specifically, LexisNexis agreed to entry of a consent decree under which it will overhaul its Accurint® for Collections suite of products by treating Collections Decisioning reports as consumer reports and by providing all members of the (b)(2) class the protections provided for in the FCRA. A118-A128, A145-A146. Moreover, it has agreed to FCRA-like protections for its new Contact & Locate product, and those protections likewise benefit all members of the class.

The settlement provides for no individualized relief to the (b)(2) class. This is not a scenario in which, for example, "each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Dukes*, 131 S. Ct. at 2557. Rather, each class member will benefit from a single injunction fully and equally. If, counterfactually, a class member were permitted to opt out of the class, he would still benefit from the class-wide, indivisible

injunctive relief. That is, even if opting out of the class were allowed, the injunction is such that it is impossible to opt out of the relief: opt-out class members would still secure the benefit of the negotiated settlement, *in addition to* the right to sue individually for more. Rule 23(b)(2) was created specifically to address this type of scenario. The district court did not abuse its discretion in certifying the (b)(2) class.

### B. None Of The Objectors' Arguments Shows An Abuse Of Discretion In The Certification Of The Rule 23(b)(2) Class

Objectors proffer several scattershot arguments to challenge the district court's certification of the (b)(2) class. None demonstrates any error, much less an abuse of discretion, in the district court's certification of the (b)(2) class.

1. ***No Conflict of Interest.*** Objectors assert that the difference in the types of relief allocated to the (b)(2) and (b)(3) class members created a conflict of interest for the class representatives, thereby compelling separate representation for each class. Objectors' Br. 31-32. They argue that without separate representation, the class should not have been certified.

Objectors' argument fails for a straightforward reason: the (b)(2) class *did* in fact have separate representation from the (b)(3) class. Although named plaintiffs Berry, Darbonne, Millen, and Saeed are members of both the (b)(2) class and the (b)(3) class, named plaintiffs Hernandez and Godfrey are members of the (b)(2) class only. A30, A32. Because plaintiffs Hernandez and Godfrey represent

only the (b)(2) class, they cannot be said to have any conflict of interest. Objectors' argument that the class representatives all represent both the (b)(2) and (b)(3) classes and have conflicts of interest is therefore wrong as a factual matter.

2.    ***LexisNexis could consent to injunctive relief.***  Objectors contend that Rule 23(b)(2) does not permit certification where the statute giving rise to the cause of action provides for only money damages, not injunctive relief.  Objectors' Br. 16-17.  But the fact that Congress did not provide injunctive relief as a remedy for private plaintiffs in an FCRA action, *see id.* at 23, is of no moment because the parties' settlement, not the statute, provides authority for the district court's judgment.  Indeed, objectors acknowledge that "a class settlement may include remedies not found in the statute giving rise to the claims."  *Id.* at 15.  For that reason, and as the district court explained, "the lack of a private right of action" for injunctive relief under the FCRA "does not preclude . . . inclusion of injunctive relief in a negotiated settlement."  A2878.  After all, "in the settlement context, 'it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all.'"  A2878 (quoting *Local Number 93 v. City of Cleveland*, 478 U.S. 501, 522 (1986)).  "[I]t is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree."  *Local Number 93*, 478 U.S. at 522.  Thus, whatever limitations Congress imposed on the availability of injunctive relief as a

remedy for an FCRA violation in an adversarial context, "these simply do not apply when the obligations are created by a consent decree." *Id.* at 523.

Nothing in Rule 23(b)(2) departs from this fundamental principle. All that Rule 23(b)(2) requires is that injunctive relief be "*appropriate* respecting the class as a whole." Fed. R. Civ. P. 23(b)(2) (emphasis added). There is no question that injunctive relief is appropriate here, regardless of whether it is a remedy permitted under the FCRA absent a settlement. LexisNexis is free to agree to a consent decree imposing a contractual obligation that otherwise could not be imposed absent its consent. And where it has done so in circumstances that otherwise meet Rule 23(b)(2)'s requirements, class certification is appropriate.

Objectors rely on decisions from the Fifth and Eleventh Circuits, *see* Objectors' Br. 16, but neither involved settlements, and both are thus irrelevant. In *Bolin v. Sears, Roebuck & Co.*, the Fifth Circuit stated in dicta that "the unavailability of injunctive relief under a statute would automatically make (b)(2) certification an abuse of discretion." 231 F.3d 970, 977 n.39 (5th Cir. 2000); *accord Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008). Those cases involved defendants' appeals from orders certifying classes over defendants' objections. *See Bolin*, 231 F.3d at 972; *Christ*, 547 F.3d at 1294. In that non-settlement context, the only authority to provide injunctive relief would be the statute providing the plaintiff's cause of action. And if that statute does not

provide for injunctive relief, it would be an abuse of discretion to try to provide it nonetheless through a Rule 23(b)(2) class action.  Here, by contrast, the district court's authority to adopt the consent decree comes from the parties' agreement, not from the FCRA.

3.    ***The relief awarded, not the relief originally requested, controls.***  In an attempt to avoid the fact that the final relief provided in the settlement is solely injunctive relief applicable to the entire class, objectors argue that "the Court must look to the Complaint, not the terms of the proposed settlement."  Objectors' Br. 17.  In other words, objectors argue that if the complaint originally sought monetary relief, Rule 23(b)(2) certification can never be appropriate in the case, even if the plaintiffs later decide to forgo such relief as part of a settlement.

Nothing in the text of Rule 23(b)(2) supports objectors' complaint-based rule.  By its terms, Rule 23(b)(2) applies so long as "*final* injunctive relief . . . is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2) (emphasis added).  Similarly, the advisory committee note to Rule 23(b)(2) provides that the rule "does not extend to cases in which the appropriate *final relief* relates exclusively or predominantly to money damages."  Fed. R. Civ. P. 23(b)(2) advisory committee's note (emphasis added).  Here, the final relief for the (b)(2) class is entirely injunctive, not monetary.  That is what matters.  To hold otherwise would mean that plaintiffs are forever bound (for class-certification purposes) by

56

the choices they made at the earliest stage of litigation. Such a holding would discourage settlement because it would ignore the realities of litigation in which parties must make compromises and alter the relief they are willing to accept in order to achieve a settlement acceptable to both sides. What matters for Rule 23(b)(2) purposes is not what the parties originally requested but rather the relief they are seeking at the time of class certification.

None of the decisions on which objectors rely supports the proposition that a court considering certification under Rule 23(b)(2) "must look to the Complaint, not the terms of the proposed settlement." Objectors' Br. 17. Neither *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594 (4th Cir. 1976), nor *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525 (D.C. Cir. 2006), even involved settlements. At the time class certification was sought in those cases, the plaintiffs were still pursuing claims for monetary relief. *Lukenas*, 538 F.2d at 596; *Richards*, 453 F.3d at 530. *Hecht v. United Collection Bureau, Inc.* did involve a settlement, but there the court looked not only at the relief requested in the complaint but also at the relief finally awarded in the settlement to determine whether monetary damages predominated over injunctive relief. *See* 691 F.3d 218, 224 (2d Cir. 2012) (reviewing the "Stipulation of Settlement" and "Settlement Order," and concluding that monetary relief predominated because, inter alia, "the damages remedy was the only remedy *awarded* that clearly applied to every class member" (emphasis

added)).  The approach that the court took in *Hecht* is directly contrary to the rule that objectors propose.

4.    ***Monetary relief is not at issue.***  Objectors make several arguments concerning whether the monetary relief that plaintiffs originally included in their complaint is "incidental" to the injunctive relief ultimately awarded or whether monetary damages are instead "predominant."  Objectors' Br. 18-26.  All these arguments involve an inapposite comparison.  When the *relief to be awarded* contains both a monetary component and an injunctive component, the injunctive relief must "predominate" for certification under Rule 23(b)(2) to be appropriate. *Thorn*, 445 F.3d at 330.  But the question whether monetary relief is incidental to, or predominates over, injunctive relief does not apply where, as here, the plaintiffs no longer seek monetary relief in the settlement (and do not foreclose any claims for actual damages).  Because plaintiffs now seek only injunctive relief, Rule 23(b)(2) applies by its terms.

One of the primary reasons courts must determine whether a request for monetary relief predominates over one for injunctive relief is to preclude parties from trying to avoid Rule 23(b)(3)'s requirements by merely "refram[ing] a damages claim" into a claim for injunctive or declaratory relief that "would simply serve as a foundation for a damages award."  *Richards*, 453 F.3d at 530.  For example, in *Richards*, the plaintiff sought on behalf of a class a declaratory

58

judgment that the defendant was liable and an injunction requiring the defendant to pay each class member compensation. *Id.* The court concluded there that, "[t]hough framed in terms of declaratory and injunctive relief, this class claim is for monetary damages." *Id.*; *see Lukenas*, 538 F.2d at 595-96 (concluding that Rule 23(b)(2) certification was inappropriate because plaintiffs were "seek[ing] rescission simply as a predicate for a monetary judgment"). But that concern does not apply here. This is a classic case for certification under Rule 23(b)(2) because the relief is purely injunctive, not a pretense for monetary relief, and the injunctive relief is indivisible and applies to the class as a whole. *Dukes*, 131 S. Ct. at 2557-58; *Richards*, 453 F.3d at 530.

5.    ***There is no due process violation.***    Contrary to objectors' suggestion, *see* Objectors' Br. 26-31, there is no automatic due process right to opt out of a Rule 23(b)(2) class that waives a monetary remedy. *See Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 507-08 (5th Cir. 1981); *see also Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) ("The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." (internal quotation marks omitted)). The "traditional justification[] for class treatment" under Rule 23(b)(2) is that the relief to be awarded "must perforce affect the entire class at once." *Dukes*, 131 S. Ct. at 2558. If objectors were permitted to opt out and pursue statutory and punitive damages

separately, they still would receive the benefit of the injunctive relief ordered in this case.  "For that reason," the (b)(2) class is "mandatory":  "The Rule provides no opportunity for . . . (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."  *Id.*  The Due Process Clause does not entitle objectors to get double relief for their FCRA claims:  i.e., relief via the injunction entered here *in addition to* separate relief via statutory and punitive damages despite the relinquishment of those remedies through the settlement.

Moreover, there is no need for opt-out rights for (b)(2) class members who believe they have sustained actual harm.  The (b)(2) class members do not release their underlying claims; (b)(2) class members may still pursue individual remedies for actual damages based on those claims.  Thus, because those class members may still pursue damages remedies individually, they are already "opted out" by the very structure of the settlement.  As the district court stated, "the Settlement Agreement preserves Rule 23(b)(2) class members' rights to bring claims for actual damages, thereby preserving their due process rights."  A2878.

In all events, Rule 23 protects objectors' due-process rights via the class-certification and settlement-approval process, even without providing opt-out rights.  *Kincade*, 635 F.2d at 507-08.

> The due process clause of the Constitution is satisfied
> when a Rule 23(b)(2) class action is settled without

> providing objectors a means of opting out because the objectors are (1) adequately represented by the named plaintiffs, (2) represented by an attorney who is qualified, (3) provided with notice of the proposed settlement, (4) given an opportunity to object to the settlement, and (5) assured that the settlement will not take effect unless the trial judge—after analyzing the facts and law of the case and considering all objections to the proposed settlement—determines it to be fair, adequate, and reasonable.

*Id.* Once these protections are provided, the proposition that due process also guarantees objectors the right to "opt[] out of the class to pursue their claims individually . . . is without merit." *Id.* at 506.

Objectors' reliance on *Dukes* in support of their due-process argument (Objectors' Br. 19-21) is misplaced. *Dukes* explained that because (b)(2) class members already receive the benefit of injunctive relief, it has long been understood that "depriving [them] of their right to sue in this manner complies with the Due Process Clause." *Id.* at 2559. *Dukes* held only that where the monetary relief *predominates* over the injunctive relief, "absence of notice and opt-out violates due process." *Id.* That is not the case here.

## CONCLUSION

For the foregoing reasons, the district court's approval of the class-action settlement should be affirmed.

61

Respectfully submitted,

Dated:  February 25, 2015

/s/ Joseph R. Palmore
JOSEPH R. PALMORE
MARC A. HEARRON
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  202.887.6940
JPalmore@mofo.com

JAMES F. MCCABE
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105

MICHAEL B. MILLER
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019

RONALD I. RAETHER, JR.
FARUKI, IRELAND & COX, PLLC
500 Courthouse Plaza, SW
10 North Ludlow Street
Dayton, Ohio 45402

DAVID NEAL ANTHONY
TROUTMAN SANDERS, LLP
P.O. Box 1122
Richmond, Virginia 23218

*Counsel for Defendants-Appellees
LexisNexis Risk and Information
Analytics Group Inc., Seisint, Inc., and
Reed Elsevier Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system on February 25, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated:  February 25, 2015                         /s/ Joseph R. Palmore
                                        _____

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Rule 32(a) of the Federal Rules of Appellate Procedure because it contains 13,948 words.

Dated: February 25, 2015                        _____/s/ Joseph R. Palmore_____

dc-783641